EQUITABLE GUARANTEE AND TRUST COMPANY,

vs.

JONH P. DONAHOE.

*New Castle, Sept. T.* 1899.

Upon a bill filed by a trust company to restrain the collection from
the complainant, either in its individual or fiduciary capacity, of
a purely personal state and county tax, the legality of which is
questioned solely on the ground of the unconstitutionality of the
law under which it had been laid and apportioned; there being
no question raised of fraud or injustice or irregularity on the part
of any officials, but only a claim that the remedy at law is inade-
quate because complainant is trustee or guardian in approxi-
mately one hundred cases, and there might be a separate action
at law in each case; and it had been notified by some of its *ces-
tuis que trust* that it would be held responsible for any payment
made by it under the law; *held,*

1.   That an injunction will not be granted to restrain the collection
of the tax by the collector designated under the law to perform
that duty.

2.   That there were no such special circumstances as would justify
the Court of Chancery in assuming jurisdiction.

3.   That the bill must be dismissed on motion for want of jurisdic-
tion.

An injunction will not be granted to restrain the collection of a tax
questioned solely on the ground of the unconstitutionality of the
law under which it has been levied; there must be shown to ex-
ist special circumstances bringing the case under some recognized
head of equity jurisprudence.

It is not a sufficient ground of equitable jurisdiction to enjoin the
collection of a tax, alleged to be unconstitutional, that the com-
plainant might be subjected to a multiplicity of suits at law be-
cause it holds and administers the office of trustee or guardian
in a large number of cases, and would be liable to be sued by its
beneficiaries in consequence of such payment.

Syllabus.

That it is real and not imaginary suits, it is probable and not possible danger of multiplicity of suits, that will warrant the assumption of jurisdiction on that ground, is a postulate of every well considered decision assuming jurisdiction. In view of the possibility of determining the validity of the tax by a single action at law, the Court will not impute to the State or its officers, acting for it and in its name, a purpose needlessly to vex and harass the citizen; particularly when the past conduct of the Collector has been in confirmation of this assumption, upon which the Court must continue to act until there is shown to be actual danger of the taxable being forced into more litigation than is sufficient for the determination in the law courts of the question of the legality of the tax, the collection of which it is sought to enjoin.

The cases in which the collection of a tax have been restrained by injunction, are for the most part those of municipal tax assessments constituting a lien upon real estate, and when such an injunction is granted on the ground of preventing a multiplicity of suits, it is generally when the suit is brought by or on behalf of all the lot owners affected by the lien.

The maxim *boni judicis est ampliare jurisdictionem* is not to be taken literally or accepted by the Court of Chancery as a guiding principle. The tendency to do this as indicated by the decisions of some American tribunals is most conspicuous, precisely where it is most dangerous; that is, in the employment of the extraordinary equitable remedies.

It is obvious that questions of jurisdiction may well be determined in one way by the Court of Chancery, when called upon to decide whether, in a given case, it should assume jurisdiction of a cause, or leave the controversy to be determined by the law courts, being distinct tribunals composed of law judges, and in another way by a court which is the only tribunal that can hear and determine the controversy in any event, and which is only required to decide whether it should hear and determine it as a court of equity, employing the procedure and remedies appropriate to a court of equity, or as a court of law, using the procedure and remedies appropriate to a law court.

As society becomes more and more complex, and interests become more and more interlaced, the value and necessity of equity's preventive remedies become greater. But, just as their beneficent possibilities have increased in consequence of the magnitude of the evils to be averted by their legitimate use, so in exact proportion has the possible mischief increased that may be caused by their illegitimate use.

The English and American equitable jurisprudence is a unique system; a complex interweaving of principle and precedent, of reason and experience. It has progressed by slow and careful steps, guided always by careful observation of the practical consequences of what has been done already. And in no department has the adherence to precedent been so marked, in no sphere of action does it behoove the equity judge to be so careful "to keep within the ancient merestones," as when there is question of wielding the tremendous power of the injunction process.

While all the powers of the English Court of Chancery were vested in our Court of Chancery by the Constitution and laws of this State, the most effective barrier against possible encroachment, either upon other tribunals or the rights of individuals, was not left to be drawn from English precedents or general principles, but was explicitly expressed as words of limitation or prohibition in the very statute which conferred the general powers; viz. "The Chancellor shall not have power to determine any matter wherein sufficient remedy may be had by common law or statute, before any other court or jurisdiction of this state."

Where on a bill for an injunction the respondent had demurred, and, before argument upon the demurrer, by agreement of counsel the question of jurisdiction was raised and argued upon a motion to dismiss the bill for want of jurisdiction, it was *held*, that while the question of jurisdiction may, of course, be considered at any time, the consent of counsel to present it in the manner stated, disposed of any objection that might be raised to the regularity of the motion or to the course of pleading adopted by the respondent.

BILL FOR AN INJUNCTION AGAINST A TAX COLLECTOR.—The bill was filed to restrain the respondent, who was the collector of County taxes for the Northern District of Wilmington, from collecting a county tax from the complainant, either individually or in its fiduciary capacity. The tax which formed the subject of the suit was laid under the provisions of 21 *Del. Laws*, ch. 25.

The bill alleged the unconstitutionality of the tax, and, in addition to the usual prayers, sought to enjoin the collector.

The respondent demurred, but there had been no argument upon the demurrer when it was agreed by counsel to argue the question of jurisdiction upon a motion to dismiss the bill for want of jurisdiction.

The tax against which the injunction was sought, was partly a state and partly a county tax.

*Anthony Higgins* and *Willard Saulsbury*, for the complainant.

The grounds for equitable jurisdiction are two.

(1) To prevent a multiplicity of proceedings by the collectors to enforce the collection of the tax levied against the Trust Company in its different fiduciary capacities, to separate would involve from twenty to one hundred different proceedings and a multiplicity of actions by the fiduciaries against the Company if it pays the tax.

What is meant by a multiplicity of suits is defined and explained in *Pom. Eq. Jur. sec.* 243, *et seq.*? A joint complaint by several persons taxed must be sustained. *Cooley, Taxation* (3d Ed.) 1428, 1432; *Holmes vs. Baker,* 16 *Gray* 259; *Porter, Ex'r. vs. Timanus,* 18 *Md.* 284; *Harvard vs. St.Clair Drainage Co.,* 51 *Ill.* 130; *Webster vs. Town of Harwinton,* 32 *Conn.* 131; *Barr vs. Beniston,* 19 *N. H.* 170; *Scofield vs. City of Lansing,* 17 *Mich.* 437; *Union Pacific Ry. Co. vs. Cheyenne,* 113 *U. S.* 516; *Nill vs. Jenkinson,* 15 *Ind.* 425.

In a suit for an injunction against certain ditch commissioners in Kent County, where the ground of objection was the irregularity of the assessment, a preliminary injunction was ordered and subsequently made perpetual. The only special ground of equitable jurisdiction alleged was that the tax had not been regularly assessed. *Curry vs. Jones,* 4 *Del. Ch.* 559, 566.

In *P. W. & B. R. R. Co. vs. Neary,* 5 *Del. Ch.* 600, the Chancellor recognized the doctrine that equity will interfere to prevent a multiplicity of suits and that it might properly intervene to prevent the collection of an illegal tax.

In *Cummings vs. National Bank,* 101 *U. S.* 153, there was a statute of Ohio authorizing suits to enjoin the illegal levy of taxes, but the United States Supreme Court recognized the existence of the jurisdiction independently of the statute.

It seems to be considered settled that, although equity will not restrain the collection of a tax on the sole ground of illegality, it will do so when the case is brought within some

recognized ground of equitable jurisdiction. *Bisph., Eq. sec.* 424; *Desty, Taxation,* 675, *sec.* 121; *Hills vs. National Albany Exchange Bank,* 12 *Fed. Rep.* 93, 105 *U. S.* 319; *Cummings vs. National Bank, supra; Pelton vs. National Bank,* 101 *U. S.* 143; *Albany City Bank vs. Maher,* 6 *Fed. Rep.* 417, 425; *Evansville Bank vs. Britton,* 8 *Fed. Rep.* 867.

*Jonh H. Rodney, Henry C. Conrad* and *Peter L. Cooper, Jr.,* for the respondents.

When a tax, as assessed, is only a personal charge against a party taxed or against his personal property, it is difficult, in most cases, to suggest any ground of equitable jurisdiction. Presumptively the remedy at laws is adequate. If the tax is illegal and the party makes payment he is entitled to recover back the amount. *Cooley on Taxation* 772; *Brewer vs. City of Springfield,* 97 *Mass.* 152, 154; *Loud vs. City of Charleston,* 99 *Mass.* 208; *Hunneywell vs. City of Charleston,* 106 *Mass.* 350; *Ritter vs. Patch,* 12 *Cal.* 298; *Dodd vs. City of Hartford,* 25 *Conn.* 232, 237; *Van Cott vs. Supervisors of Milwaukee City,* 18 *Wis.* 247; *Brown vs. City of Concord,* 56 *N. H.* 375, 383, 384; *Savings Bank vs. Portsmouth,* 52 *N. H.* 29; *Clark vs. County Treasurer,* 21 *Minn.* 387; *Bradish vs. Lucken,* 38 *Minn.* 191.

If the party injured by the illegal tax has an adequate remedy at law then equity has no jurisdiction to interfere. 2 *Beach, Eq. Juris.* 778; *Arnold vs. Town of Middletown,* 39 *Conn.* 402; *Waterbury Bank vs. Lawler,* 46 *Conn.* 243, 247.

The Chancellor:—

The object of the bill filed in this cause is to restrain the respondent, a tax collector of the State of Delaware for the Northern distict of Wilmington, from enforcing the collection from the complainant, either in its individual or fiduciary capacity, of any tax laid and apportioned under the authority of chapter 25, vol. 21, of the Laws of Delaware, entitled "Chapter 381, volume 20, as amended—An act to equalize taxation for state and county purposes."

The bill was filed in June, 1899, and in July the respondent filed his demurrer. No argument has been had upon the

demurrer, but in October, 1899, by agreement of counsel on both sides, the question of the jurisdiction of this Court to hear and determine the cause was argued upon a motion to dismiss the bill for want of jurisdiction.

The question of jurisdiction may, of course, be considered by the Court at any time, whether counsel raise it or not, but the consent of counsel to present it in this manner disposes of any objection that might be raised as to the regularity of the motion or to the course of pleading adopted by respondent.

The tax sought to be enjoined is in part a state tax, and it is the first instance in this State of an application to the Court of Chancery for an injunction to restrain the collection of a state tax, although there is one case in our reports where a bill was filed to restrain the collection of a county tax.

That was the case of *Philadelphia, Wilmington & Baltimore R. R. Co. vs. Neary*, 5 *Del. Ch.* 600, in which it was sought to obtain an injunction to restrain the collection of a county tax, laid and apportioned by the Levy Court of New Castle County upon the assessment of the roadway and certain other real estate of the complainant, the Philadelphia, Wilmington & Baltimore Railroad Company. In that case (pp. 610–12) upon the question of jurisdiction, the late Chancellor Saulsbury used the following language:

" Before the counsel in the cause proceeded in their argument, I intimated to them that I should dissolve the preliminary injunction heretofore awarded, and dismiss the bill, unless the case was brought under some recognized head of equity jurisprudence, as, where there would otherwise be a cloud upon the title, or a multiplicity of suits, or any irreparable injury.

The ordinary remedies in the case of taxes illegally assessed and levied are an action at law after a compulsory payment, either of trespass against the collecting officer or of assumpsit against such officer or the public corporation to which the amount has been paid.

These remedies, says *Pierce on Railroads* 488, are ordi-

narily ample, and do not involve the public embarrassments incident to the intervention of equity in such cases.

Equity will not, therefore, enjoin the collection of a tax alleged to be illegal, where there is an adequate remedy at law. It will not interfere by its preventive process on account of mere irregularities, hardship and injustice in the assessment, or errors or excess of valuation.

It would be impossible, if I were to attempt it, to reconcile the various and conflicting decisions which have been made by the courts in the different states upon the subject of equitable jurisdiction in such cases.

This want of uniformity of decision in this country has arisen from the want of distinct equitable tribunals to adjudicate such questions, and from the blending of legal and equitable powers in the same tribunals.

The principles I have announced upon this subject will govern my action whenever similar questions shall arise before me.

The solicitors for the parties, respectively, have filed among the papers in the cause an agreement, which is in the following words: "It is agreed and understood that there are divers other taxes assessed against the corporation, the complainant, and other corporations owning like property, in the County of New Castle, in the hands of several other collectors in the said County of New Castle for collection; and that, in order to avoid a multiplicity of suits, and prevent unreasonable litigation, it has been agreed that these facts are to be taken to be admitted in this case with the like effect as if the same had been stated in the bill of complainant, and admitted by the answer. And it is also agreed and understood, and so stipulated, that this cause shall be considered just as though all the parties who are in like case as complainant and defendant had been parties thereto.'" Then, after disposing of an argument that the tax would affect commerce between the states, the learned Chancellor continued: "The agreement referred to by counsel having been filed, and having, for that reason, taken jurisdiction of the cause, I shall, for the reasons before stated, decree," etc. The general principle an-

Opinion:—Court of Chancery as separate tribunal.

nounced in this case by Chancellor Saulsbury, that equity will not enjoin a tax alleged to be illegal, when there is an adequate remedy at law, is too fundamental and elementary to be questioned seriously in this state. Counsel for the complainant, however, insist that the Court of Chancery should assume jurisdiction in this cause "to prevent a multiplicity of suits," the prevention of a multiplicity of suits being an ancient and necessary, although ill-defined, department of equitable jurisdiction.

In considering this contention I shall refrain from discussing the general subject of equitable jurisdiction "to prevent a multiplicity of suits," to the extent to which I am tempted by the cases and treatises cited in this cause; but it will be necessary, for the sake of clearness, to give some consideration to the foundations upon which the jurisdiction of this Court rests, and to make some reference to the many authorities which counsel have used in their arguments.

Although it is true that in some states there are local judges, called chancellors, possessing an equitable jurisdiction in their respective counties or judicial districts, entirely distinct from the law courts, yet with the exception of New Jersey, the State of Delaware stands alone in preserving in its full power and efficiency that distinct equitable tribunal, the jurisdiction of which is the slowly built and laboriously fashioned product of many generations and of some of the best minds known to legal history. And it is obvious that questions of jurisdiction may well be determined in one way by the Court of Chancery, when called upon to decide whether, in a given case, it should assume jurisdction of a cause, or leave the controversy to be determined by the law courts being distinct tribunals, composed of the law judges, and in another way by a court which is the only tribunal that can hear and determine the controversy in any event, and which is only required to decide whether it should hear and determine it as a court of equity, employing the procedure and remedies appropriate to a court of equity, or as a court of law using the procedure and remedies appropriate to a law court.

Counsel for complainant rely largely upon the arguments and authorities contained in the painstaking and elaborate work of Mr. Pomeroy on Equitable Jurisprudence, fully sixty pages of that treatise being devoted to a discussion of the equitable doctrine of "multiplicity of suits," more especially in relation to tax controversies. In view of this and of the wide reputation of Mr. Pomeroy, I will use a quotation from his discussion of this subject as an illustration of the distinction to which I have just referred, and of the probable point of view which has sometimes determined the decisions of those blended tribunals. 1 *Pom. Eq. Jur.* sec. 270, *note* 2, reads as follows:

"Can it appear to the thoughtful observer otherwise than as a farce or travesty upon the administration of justice to see a court deny all relief to a body of taxpayers suing in the form of an equitable action to restrain an illegal tax, or to set aside an illegal official act, such as a town bonding, for the alleged reason that their interests were separate, and could not be determined by one decree, and then see the self-same judges, on behalf of the same taxpayers, in the same case, and upon exactly the same facts, set forth in a petition, grant the very identical relief, and set aside the tax or official act, by their adjudication made on writ of certiorari."

The statute which gives to the Court of Chancery in this State essentially the jurisdiction of the English Court of Chancery is the same statute which conferred equitable jurisdiction upon the Colonial Court of Common Pleas in the reign of George I, Gordon being Lieutenant Governor of the Province. The present Court of Chancery was created by the Constitution of 1792, and invested by that Constitution with the equitable jurisdiction theretofore vested in the judges of the Court of Common Pleas; the phraseology of the original colonial statute in all the jurisdictional clauses remaining unaltered to the present day, except for the slight modifications necessitated by the constitutional substitution of a Chancellor for the Judges of the Court of Common Pleas. The Constitution, as well as the colonial statute of George I contains the following proviso: "Provided, that the Chancel-

lor shall not have power to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this state; but that where matters, determinable at common law, shall be brought before him in equity, he shall remit the parties to the common law." (*Const.* 1792, *art.* 6, *sec.* 14); 1 *Del. Laws*, p. 42. *id.* 131, 132, *c.* 54a, *secs.* 21, 25. Thus, while all the powers of the English Court of Chancery were vested in our Court of Chancery by the Constitution and laws of this State, the most effective barrier against possible encroachment, either upon other tribunals or the rights of individuals, was not left to be drawn from English precedents or general principles, but was explicitly expressed as words of limitation or prohibition in the very statute which conferred the general powers.

The jurisdiction that exists in equity "to prevent a multiplicity of suits," is based, necessarily, in the last analysis, upon the inadequacy of the legal remedies, evidenced by the multiplicity of suits, the costly and harassing litigation, which can be prevented only by the intervention of a court of equity. As expressed by our own statute, 'The Chancellor shall not have power to determine any matter wherein sufficient remedy may be had by common law or statute, before any other Court or jurisdiction of this State," and therefore, when this Court is asked "to determine any matter" in order "to prevent a multiplicity of suits," the real test of jurisdiction is found in the question,—to be answered in the light of authority as well as reason—is there imminent and threatened a multiplicity of siuits of such a nature and between such parties as to satisfy the Court that the legal remedies are not sufficient?

The earliest instances in which the Court of Chancery exercised this jurisdiction were called "bills of peace," and in the growth and expansion of this branch of its jurisdiction several classes or subdivisions quite distinct in kind have been defined. The most familiar and well defined are such as the bill praying for an injunction to prevent repeated trespasses, when the legal rights have been ascertained; or a continuing nuisance, where the purely legal rights are undis-

puted, and the facts are clear; or to restrain further actions of ejectment after several successive actions have been prosecuted without success.

The boldest and most ingenious advocate would hardly attempt to include the present case within any of those subdivisions, but the analogy sought in this case is with that class of cases which trace their origin to suits brought to decide controversies between all the copyholders of a manor and their lord, or such suits as those brought by a proprietor in possession claiming exclusive right of fishery in certain waters against numerous other persons asserting rights to fish in the same waters by separate and independent claims. *Lord Tenham vs. Herbert,* 2 *Atk.* 483; *Mayor vs. Pilkington,* 1 *Atk.* 282; and the cases cited by Chancellor Kent in *Brinkerhoff vs. Brown,* 6 *Johns. Ch.* 139. To this class belong a number of tax suits which have been cited in this cause, and in some of them the reasoning, if it should be carried to its logical conclusion, would leave few of the affairs of men out of reach of "the strong arm of equity"—the injunction process. In *Rex vs. Williams,* 13 *Howell, St. Tr.* 1430, Sir R. Atkyns remarked:

"It is, indeed, commonly said, '*Boni judicis est ampliare jurisdictionem.*' But I take that to be better advice which was given by Lord Chancellor Bacon to Mr. Justice Hatton upon the swearing him one of the judges of the court of common pleas,—that he would take care to contain the jurisdiction of the court within the ancient merestones without removing the mark."

The learned and conscientious equity lawyers who, as Chancellors of Delaware, have built our own chancery system upon the deep foundations of the English Court of Chancery, have been scrupulous to follow that advice, as have the many able men who have presided over the New Jersey Court of Chancery, and as did the great equity lawyer of New York, Chancellor Kent. It is to other American tribunals, and, I regret to say, to some very powerful ones, that we must look to find the hoary Latin maxim above quoted apparently taken literally, and obeyed as a guiding principle. And this

Opinion:—legal remedy considered.

tendency is most conspicuous precisely where it is most dangerous; that is, in the employment of the extraordinary equitable remedies. As society becomes more and more complex, and interests become more and more interlaced, the value and necessity of equity's preventive remedies become greater. But, just as their beneficent possibilities have increased in consequence of the magnitude of the evils to be averted by their legitimate use, so in exact proportion has the possible mischief increased that may be caused by their illegitimate use.

The English and American equitable jurisprudence is a unique system; a complex interweaving of principle and precedent, of reason and experience. It has progressed by slow and careful steps, guided always by careful observation of the practical consequences of what had been done already. And in no department has the adherence to precedent been more marked, in no sphere of action does it behoove the equity judge to be more careful "to keep within the ancient merestones," as when there is question of wielding the tremendous power of the injunction process.

The bill in this cause prays for an injunction to restrain the collection from the complainant, the Equitable Guarantee and Trust Company, either in its individual or fiduciary capacity, of a purely personal tax, which, in part at least, is a state tax. The legality of the tax is questioned solely on the ground of the unconstitutionality of the law under the authority of which it has been laid and apportioned. No question of fraud is raised, or of injustice, or irregularity on the part of any officials. It is conceded that there is a remedy at law in this State to recover back any illegal tax after a compulsory payment, as was stated by Chancellor Saulsbury in the case, already cited, *P. W. & B. R. R. Co. vs. Neary, supra*, but complainant alleges that the remedy at law is inadequate, because it holds and administers the office of trustee or guardian in approximately one hundred cases; that, if it should pay to the respondent, the said collector, the tax demanded in each case, and bring suit for the recovery thereof in each, the costs, fees and expenses necessarily incurred as plaintiff in the large majority of cases would amount to more

than the sum claimed as taxes, and, moreover, it would be subjected to a multiplicity of suits on the part of its beneficiaries in consequence of such payments, it having been "already notified that actions will be instituted by some of said beneficiaries if it shall diminish the funds in its hands as fiduciary by such payments."

These are the sole grounds suggested in the bill, or seriously urged by counsel as giving equitable jurisdiction in the cause; and in considering them it will not be necessary to examine in detail the conflicting American decisions cited, as they are easily grouped, and very few are really relevant to the precise question presented.

In the case of *Fellows vs. Spaulding*, 141 *Mass.* 89, 92, 6 *N. E.* 548, 549, *Martin*, C. J., dismissed a bill in equity filed by the assignees in insolvency of Lewis Killam against Spaulding, Lewis Killam, the insolvent debtor, and thirty-seven other defendants to restrain certain proceedings at law in order to prevent a multiplicity of suits. The Chief Justice, in his opinion dismissing the bill, used the following language;

"Such a bill is addressed to the discretion of the court of equity, and will not be entertained unless it appears there is a practical necessity for the interposition of the court to prevent vexatious litigation. * * * The same questions of law are raised in each case, and there is no reason why one suit in the usual course of proceedings in insolvency, the other cases being continued to abide the result, should not settle all the cases."

In the case of *Express Co. vs. Seibert* (*C. C.*) 44 *Fed. Rep.* 310, 315, which was a bill in equity for an injunction to restrain the collection of a tax, Caldwell, J., in the course of a long and able opinion dismissing the bill, said: "Multiplicity of suits having also been urgently urged upon the court as a ground of jurisdiction in the case, it is proper to consider that question. It is real and not imaginary suits, it is probable and not possible danger of multiplicity of suits, that will warrant the assumption of jurisdiction on that ground. While it is true, as the plaintiff contends, that the State might bring a

separate suit for each day's penalty, the Court would hardly be justified in acting on the assumption that it would do so. The State is not to be looked upon in the light of a barrator; and the Court will not impute to it, or to its officers acting for it and in its name, a litigious and vindictive spirit, or a purpose needlessly to vex and harass the citizen with lawsuits. Whatever the rule may be in the case of natural persons, the Court will presume that a state is incapable of such a vulgar passion, and, until the fact is shown to be otherwise, will act on the assumption that a state will not bring any more suits than are fairly necessary to establish and maintain its rights."

It is entirely unnecessary to cite other authorities in support of the proposition above stated that "it is real and not imaginary suits, it is probable and not possible danger of multiplicity of suits, that will warrant the assumption of jurisdiction on that ground," because it is the postulate of every well-considered decision, assuming jurisdiction on that ground. It is a proposition involved in any complete statement of the reasons for the jurisdiction.

The case in controversy is closely analogous in this respect to the one last cited. The collection of the tax demanded of the complainant in its individual capacity, or of a single one of the taxes claimed from it in its fiduciary capacity, would enable the complainant to avail itself of the legal remedy, and by a single action in the Superior Court test the constitutionality of the disputed act. Nay, more, the legal remedy is peculiarly expeditious and effective for that particular purpose, because under the provisions of our Constitution the Superior Court if it should consider that the question of law involved ought to be heard by the Court *in banc*, has the power, upon the application of either party, to direct it to be so heard. And in that case the Court *in banc*, consisting of the Chief Justice and the four Associate Judges—all the Judges composing the Supreme Court except the Chancellor —would hear and determine the question in the first instance. With this plain and obvious method of legally determining the controversy open to the complainant, the Court will not, to quote again the language of Judge Caldwell, "impute to

the State, or its officers acting for it and in its name, a litigious and vindictive spirit, or a purpose needlessly to vex and harass the citizen." The past conduct of the respondent, the collector, who has not been restrained from attempting to collect by any process of this Court, is in confirmation of this assumption, and I must continue to act upon it until the complainant should be shown to be in actual danger of being forced into more litigation than that which I have shown to be sufficient for the determination in the law courts of the question of the legality of the tax the collection of which it seeks to have enjoined.

Even if it should be conceded, therefore, that the complainant is correct in the contention that the multiplicity of suits shown to be possible, is of such nature and between such parties as would constitute a ground of equitable jurisdiction, the consideration already advanced would be sufficient to necessitate the adverse determination of the question of jurisdiction. But that contention is not conceded. I have taken infinite pains in my examination of the multitude of American authorities, where equitable jurisdiction has been assumed "to prevent a multiplicity of suits," cited by the writers of treatises to which counsel for complainant have referred, and, as I have before intimated, there are, in the number, cases which completely disregard the principles which are considered to be fundamental, by all the authorities held by the Court of Chancery of Delaware to be of controlling influence in this jurisdiction. I would be invading the province of the treatise writer, however, if I were to attempt to review and analyze them, and the lengthy discussion required for an adequate consideration of the scope of the equitable jurisdiction to prevent a multiplicity of suits would not be justified in a case like the present, in which it is not necessary in order to arrive at a decision. It is quite sufficient for me to state the particular conclusions necessary for the decision of this cause, without making statements defining and limiting the scope and meaning of the doctrine, which statements might, after all, be considered only *obiter dicta*.

The only case cited which I feel myself called upon to

discuss at any length is that of *Cummings vs. National Bank,* 101 *U. S.* 153, 25 *L. Ed.* 903. This is the case mainly relied upon by complainant's counsel, and is the only one that sufficiently resembles the case before me to suggest the propriety of distinguishing it. In that case the Court enjoined the treasurer of Lucas county, Ohio, from collecting a tax wrongfully assessed against the shares of the stockholders, payment of which was demanded of the bank. The statute of the State of Ohio expressly declared that suits might be brought to enjoin the illegal levy of taxes and assessments, or the collection of them. And of the effect of this statute, Justice Miller, in his opinion, says:

"There can be no doubt that the remedy by injunction against an illegal tax, expressly granted by the statute, is to be enforced, and can only be appropriately enforced on the equity side of the Court. The statute also answers another objecton made to the relief sought in this suit, namely, that equity will not enjoin the collection of a tax except under some of the well known heads of equity jurisdiction, among which is not a mere over valuation, or the illegality of the tax, or in any case where there is an adequate remedy at law. The statute of Ohio expressly provides for an injunction against the collection of a tax illegally assessed, as well as for an action to recover back such tax when paid, showing clearly an intention to authorize both remedies in such cases." Here is the explicit statement of the learned Judge that the statute answers the obvious objection to the equitable jurisdiction of the Court. In view of this statement, the other reasons given by him for granting equitable relief are of the nature of *obiter dicta.* He says: "In paying the money the bank is acting in a fiduciary capacity as agent for the stockholders; an agency created by the statute of the state. If it pays an unlawful tax assessed against its stockholders, they may resist the right of the bank to collect it from them. The bank, as a corporation, is not liable for the tax, and occupies the position of a stakeholder, on whom the costs and trouble of the litigation should not fall. If it pays, it may be subjected to a separate suit by each shareholder.

If it refuses, it must either withhold dividends, and subject itself to litigation by donig so, or refuse to obey the laws, and subject itself to suit by the state. It holds a trust relation which authorizes a court of equity to see that it is protected in the exercise of the duties appertaining to it. To prevent multiplicity of suits, equity may interfere." It is in no respect incumbent upon me, for the purpose of deciding this cause, to criticise in any way the views expressed by a Justice of the Supreme Court of the United States in regard to its equitable jurisdiction in the State of Ohio over a tax controversy between a county treasurer and a national bank. I only quote his language in order to note the radical difference in the cases, and the absence from the case before me of both the grounds alleged as reasons, outside of the express statutory authority, for the jurisdiction of the Court in the Ohio case. There, the bank occupied "the position of a stakeholder, on whom the costs and trouble of the litigation should not fall." Here it is 'the duty of the complainant, either as trustee or guardian, to sift, examine, pay or litigate every claim or demand that at any time may be made against its beneficiaries or wards in respect to their funds in its custody. That is one of the chief duties of a guardian or trustee, and for its services it receives a compensation, for the sake of which compensation, in part it undertakes to act as trustee or guardian. There, it was conceded that the tax against all the shareholders must be paid in a lump sum, if paid at all, and that a multiplicity of suits would be instituted against it by its shareholders. Here as we have seen, such a presumption is negatived by the circumstances.

Another Ohio case was decided at the same time by the same Court, identical in its nature, and these two Supreme Court cases have been followed by United States Circuit Courts in several national bank tax controversies in other states. The case cited is also referred to in *Shelton vs. Platt* (*decided in* 1891) 139 *U. S.* 591, 599, 11 *Sup. Ct.* 646, 35 *L. Ed.* 273, where the Supreme Court, on appeal from a Circuit Court, reversed the Court below, and held, as stated in the syllabus: "While an unconstitutional tax may confer no right, impose

no duty, and support no obligation, the trespass resulting from proceedings to collect such void tax cannot be restrained by injunction, where irreparable injury, or other ground for equitable interposition, is not shown to exist." The opinion of the Court, delivered by the Chief Justice, is very strong in emphasizing the public importance of the general rule that a suit in equity will not lie to restrain the collection of a tax, unless there are special circumstances bringing the case under some recognized head of equity jurisdiction, and shows, by reviewing a long list of Supreme Court cases, the consistency of that Court in upholding the principle. He described the case of *Cummings vs. Bank,* in the following words: "The jurisdiction is maintained upon the ground of preventing a multiplicity of suits, as well as that the remedy by injunction against an illegal tax was expressly granted by a statute of the state whose levy of taxes was drawn in question." In the course of his opinion, the Chief Justice refers to the act of Congress forbidding suit for the purpose of restraining the assessment or collection of taxes under the Internal Revenue Laws, in respect of which the Supreme Court held that the remedy by suit to recover back the tax after payment, provided for by the statute, was exclusive (*Snyder vs. Marks,* 109 U. S. 189, 3 *Sup. Ct.* 157, 27 *L. Ed.* 901), and says: "Legislation of this character has been called for by the embarrassments resulting from the improvident employment of the writ of injunction in arresting the collection of the public revenue; and even in its absence the strong arm of the court of chancery ought not to be interposed in that direction except where resort to that court is grounded upon the settled principles which govern its jurisdiction." In *Youngblood vs. Sexton,* 32 *Mich.* 408, Judge Cooley, delivering the opinion of the Court, said: "It was decided at an early day in this state that equity had no jurisdiction to restrain the collection of a personal tax, even conceding it to be illegal. The principle has ever since been regarded as not open to controversy in this state." He adds, "In other states it is supported by a strong preponderance of authority," and cites the following cases, which are those usually cited in any discussion of the subject: *Brewer*

*vs. City of Springfield*, 97 *Mass.* 152; *Durant vs. Eaton*, 98 *Mass.* 469; *Loud vs. City of Charlestown*, 99 *Mass.* 208; *Whiting vs. City of Boston*, 106 *Mass.* 89; *Hunnewell vs. City of Charlestown*, *Id.* 350; *Rockingham Ten Cent Sav. Bank vs. City of Portsmouth*, 52 *N. H.* 17; *Dodd vs. City of Hartford*, 25 *Conn.* 232; *Ritter vs. Patch*, 12 *Cal.* 298; *Berri vs. Patch*, *Id.* 299; *Worth vs. Commissioners of Fayetteville*, 60 *N. C.* 617; *Van Cott vs. Supervisors*, 18 *Wis.* 247; *Greene vs. Mumford*, 5 *R. I.* 472; *McCoy vs. Town of Chillicothe*, 3 *Ohio* 370; *Conley vs. Chedie*, 6 *Nev.* 222; *Deane vs. Todd*, 22 *Mo.* 90; *Sayre vs. Tompkins*, 23 *Mo.* 443; *Barrow vs. Davis*, 46 *Mo.* 394; *McPike vs. Pew*, 48 *Mo.* 525; *Mayor, etc., vs. Meserole*, 26 *Wend.* 132; *Council vs. Pippin*, 31 *Ala.* 542; *Mayor, etc., of City of Baltimore vs. Baltimore & Ohio R. Co.*, 21 *Md.* 50; *Dows vs. City of Chicago*, 11 *Wall.* 108, 20 *L. Ed.* 65; *Hannewinkle vs. City of Georgetown*, 15 *Wall.* 547, 21 *L. Ed.* 547. A thorough examination of all the cases in which the collection of a tax is restrained by injunction, will disclose the fact that in most of them it is municipal taxes or assessments constituting a lien upon the real estate which are restrained, and that, where an injunction is awarded on the ground of preventing a multiplicity of suits, it is generally in the case of taxes or assessments made a lien upon land, where the suit is brought by or on behalf of all the lot owners affected by the lien.

Mr. High collects a multitude of cases in a long and interesting review of the general question of the use of injunctions against taxes, and, when he comes to treat of personal taxes, summarizes as follows:

"As regards the question of equitable relief against a tax which is levied upon or sought to be collected out of personal property, the well established doctrine of uniform and general recognition is that equity will not interfere by injunction to restrain a levy upon or sale of personal property in satisfaction of a tax which is alleged to be illegal. Even in those states which have inclined to depart from the general doctrine denying relief in equity against an illegal tax, the courts, while contending for the jurisdiction in cases affect-

Opinion:—conclusion.

ing the title to real estate, nevertheless refuse to interfere where only personal property is involved, and leave the parties aggrieved to their remedy at law." 1 *High Inj. sec.* 505.

While there is no doubt that tax controversies may arise in this State, from time to time, where special circumstances may be shown to exist, which will bring them under some well settled principle of equity jurisdiction, and require the interpositon of the strong arm of the Court of Chancery, these cases must be judged, and the principles controlling the action of this Court in regard to them must be announced, as they come before me. In the cause now pending I am unable to discover such special circumstances as are necessary to justify me in assuming jurisdiction, and I am constrained to decide that the motion to dismiss the bill for want of jurisdiction must be granted.

A decree will be entered dismissing the bill, and directing the costs to be paid by the complainant and respondent, respectively, in equal parts.