MARY ANN DILL, SAMUEL HERMAN DILL, ALVERTIE WROTEN; HOMER C. DILL, SUSAN ELLA LITTLE and LEONARD C. DILL,

*vs.*

MARY ELLEN DILL, ANNIE E. DILL, JOHN WESLEY DILL and EMELINE DILL.

*Kent, March* 16, 1914.

The cutting of timber by a tenant will be prevented by an injunction, because of the inadequacy of legal remedies.

The cutting of timber by a trespasser will be prevented by an injunction, because of the inadequacy of legal remedies.

A court of equity will enjoin destructive trespass to land and timber growing thereon, without regard to the question whether in the particular case they have any peculiar value or not.

Where title to land involved in a suit to restrain the cutting of timber thereon is in dispute, a court of equity will, under *Rev. Code* 1852, amended to 1893, *p.* 704, *c.* 95, §1, and independent thereof, direct a trial of the issue of title by jury in the Superior Court and pending the trial will by preliminary injunction preserve the estate in *statu quo*.

BILL TO RESTRAIN THE CUTTING OF TIMBER. The bill alleged that on or about March 1, 1890 Andrew Dill died seized of a certain tract of land situate in South Murderkill Hundred, Kent County, a portion of which lies north of a stream known as White Marsh branch, adjoining lands of Mary Ellen Dill,

Annie E. Dill and John Wesley Dill.   The greater part of the land north of White Marsh branch is woodland and branch-land, and the balance of it was at one time cultivated.   By his will Andrew Dill left all of the real estate owned by him at the time of his death to his wife, Mary Ann Dill, one of the complainants, for life, and at her death to her children, the other complainants, and Emeline Dill, who refused to become a party complainant, and who therefore was made a party defendant, though no relief was asked in the bill against her.   The bill also alleged that on February 4, 1913, and at divers other times prior thereto, the defendants other than Emeline Dill, their agents, workmen, servants and employees did enter upon and cut, fell and carry away timber trees growing on said land, thereby materially damaging said land and reducing the value thereof. It is further alleged that these defendants threaten to continue to trespass upon said land and cut, fell and carry away timber, which would further damage the land and reduce the value thereof.   Besides the usual prayers for answer, subpoena and other relief, there are prayers for discovery by the defendants to the complainants of the number of trees cut and for an injunction to restrain further cutting, felling and carrying away of timber growing on said land, but the principal relief sought is an injunction.

The answer denied the cutting, felling and carrying away of timber on February 4, 1913, but admitted that at times prior thereto they, their father and grandmother had cut, felled and carried away timber and wood from said land.   Two defenses were set up by the answer: (1) That the legal title to said land is in the defendants, other than Emeline Dill; and (2) that if the legal title to said land is not in said defendants, then by the exercise by them, their father and grandmother of ownership and right to said land, which was held, possessed and controlled by them adversely to every one else for over twenty years, they have acquired title thereto.

By agreement of the solicitors for the complainants and defendants, the cause was heard on bill, answer, testimony of witnesses examined orally before the Chancellor and exhibits.

*William Watson Harrington* and *James M. Satterfield*, for the complainants.

*James H. Hughes*, for the defendants.

THE CHANCELLOR. The only relief sought by the complainants is a permanent injunction perpetually enjoining the defendants from cutting timber. (This, of course, is not literally true, because one of the defendants is a co-tenant of the same title with the complainants, and any decree for an injunction, temporary or permanent, should not be made applicable to that particular defendant.) The title of the complainants is disputed by the defendants. Unless the complainants have a good title they are not entitled to have the defendants perpetually enjoined from cutting the timber.

There is no doubt that in this State the cutting of timber, whether by a tenant (and so constituting technical waste), or by a trespasser, is such an injury as will be prevented by an injunction by decree of the Court of Chancery. *Waples v. Waples, 2 Harr.* 281, and *Fleming v. Collins, 2 Del. Ch.* 230, wherein there was a trespass under a claim of title adverse to the complainant. There is corroborative authority in the decisions of other courts. 5 *Pomeroy's Equity Jurisprudence*, §495. The fundamental source of this jurisdiction is the inadequacy of legal remedies to save a threatened injury and the character of the property affected. Land and timber growing on it are made subject to protection, because they are regarded *per se* as property of peculiar value, and a court of equity will enjoin destructive trespass to them without regard to the question whether in the particular cases they have any peculiar value or not. When, however, the title to the land in question is in dispute, injunctive relief is withheld pending a decision as to the title, for courts of equity will not in general try disputed legal titles to land. 1 *Pomeroy's Equity Jurisprudence*, §252.

Pomeroy, it is true, says the above rule is one of expediency and policy rather than essential condition and basis of the equitable jurisdiction. This means that the court may retain jurisdiction to try a disputed title. The matter is thus stated in 5 *Pomeroy's Equity Jurisprudence*, §506:

"The general principle of equity, that having taken jurisdiction of a cause for one purpose it will retain it and give complete relief, makes it a proper proceeding for courts of equity, if they see fit, to investigate the title themselves at the hearing of the same suit in which the temporary injunction is granted, and then make permanent or dissolve the temporary injunction according to the result of the inquiry."

It will be seen, however, that the policy of this State is very clear on the subject. It is said that the need for injunctive relief to prevent threatened acts of trespass and threatened depredations which if continued would deplete the land of trees and thereby injure the freehold of the complainant, gives this court of equity jurisdiction to decide the dispute as to title, on the theory that thereby multiplicity of suits is prevented. In the case of *Hughlett v. Harris*, 1 *Del. Ch.* 349, 12 *Am. Dec.* 104, Chancellor Kensey Johns, Sr., restricted the rule above mentioned to cases where the party has not only a right to the injunction to prevent future wrong, but also to have relief in a court of equity for the wrong previously done. In this case, however, there is no question of multiplicity of suits. Here it is further urged that because this court has jurisdiction to grant an injunction to stop the cutting of timber, it should proceed to full relief by deciding the dispute as to the title of the complainants to the land on which the timber grows. Whatever may be the rule elsewhere, the precedents and policy of the courts and of legislation here is to the contrary of the above proposition. The case of *Fleming, Trustee, v. Collins*, 2 *Del. Ch.* 230, furnishes a complete guide and precedent in this case, which is entirely like the reported case, so far as appears in the report and in the record. The bill was to prevent the cutting of timber and an account. By the answer the defendant claimed to be in possession and to be entitled to the land and cut the timber because he had a right to do so as owner. The title of the complainant was also attacked. Before the final hearing of the case an issue was directed to try the title to the land in controversy by a jury at bar of the Superior Court, and the jury found the title to be in the complainant. The cause was then heard on bill, answer, exhibits, depositions and the verdict found on the issue, the question being as to the account for timber cut

and satisfaction for the value thereof. The subject-matter being the cutting of timber Chancellor Harrington held it was an injury irreparable in its nature and remediable in equity by whomsoever committed, and not confined to technical waste. Having taken jurisdiction to prevent an injury of this kind, though it be in the nature of a trespass, the Court of Chancery will do complete justice by decreeing an account of and enforce satisfaction for the timber cut.

The course pursued by Chancellor Harrington should be followed. The equity of the bill in this case is to prevent the further threatened cutting of timber, which in this State at least is considered an injury to the real estate of such a character as is irreparable, and for this there is ample authority in the decisions of courts elsewhere. *Hughlett v. Harris*, 1 *Del. Ch.* 349, 12 *Am. Dec.* 104; *Wilds v. Layton*, 1 *Del. Ch.* 226, 12 *Am. Dec.* 91. As in the case of *Fleming v. Collins, supra*, there is here a serious dispute as to the title to the premises. The complainants claim the paper title and in support of their contention show a plot in the Orphans' Court in proceedings for partition, whereby the title to the premises in question was acquired by one under whom the complainants are clearly entitled, if the ancestor took title by the proceeding in the Orphans' Court. On the other hand, the defendants by a deed claim paper title, though there is as to that deed a difficulty in identifying the premises mentioned therein as the premises in question. Both sides claim possession under color of title as above stated. The defendant further claims that if they have no color of title, still by adverse possession they have acquired title. It is impossible to reconcile the testimony. If the issues of fact related to the woodland alone, treated as a separate tract, the difficulty would not be so great. But without expressing an opinion on the question of title, it is very clear that this court should not try the title to the land, but should send an issue to a jury for the purpose. This issue is one of fact, as well as of law, and so is proper for a jury of the Superior Court to try under the instructions of the court as to the law. If it had been a question of law only, the issue should be refused, as was

done by the Chancellor in *Sparks v. Farmers' Bank*, 3 *Del. Ch.* 225, 230.

Even as a question of policy or expediency, the Court of Chancery should not undertake to grant a perpetual injunction based on a decision of the dispute as to title to land. It is not clear that this remedy would be full and adequate. True, it is all the complainants ask for. But does it really settle the question of title, or prevent the parties from bringing a suit or suits at law to try their title? It seems not. But if this court should in this case direct that an issue be tried by a jury as to whether the complainants or defendants held the legal title to the land, then there would be an adjudication between them in a court of law that would settle the title. Again, even if the complainants be found in this cause to be entitled to the property in question, possession could not in this cause be awarded them and they must still bring ejectment at law. 5 *Pomeroy's Equity Jurisprudence*, §507.

Not only is it the established doctrine in Delaware that the Court of Chancery will not try disputes of title to land, even in cases where it has a clear right to protect the land pending a decision of the dispute as to title; but there is in general in Delaware no need for an appeal to a court of equity for such relief. By an ancient statute a writ of estrepment may be issued by the Superior Court to prevent waste during the pendency of an action of ejectment. See *Revised Code of* 1893, *c.* 88, §10. A court of equity, then, should be very chary of taking jurisdiction to try disputes of title when there is such an ample remedy at law. There is, moreover, the statutory requirement that:

"When matters of fact, proper to be tried by a jury, shall arise in any cause depending in Chancery, the Chancellor shall order such facts to trial issues at the bar of the Superior Court." *Revised Code of* 1893, *c.* 95, § 1.

Beyond all this is the time-honored duty of the Court of Chancery not to step outside the well-defined limits of its jurisdiction, but, as my predecessor said, "to keep within the ancient merestones," *Equitable Guarantee & Trust Co. v. Donahoe*, 8 *Del. Ch.* 422, 45 *Atl.* 583.

Title.

It has been evident in this case that there was a dispute as to title, and no further proceeding in this court would have been taken pending the decision of an issue to try the question of title but for the attitude of counsel for both sides of the cause.    But in the absence of a stipulation in the cause, the objection made in the brief of counsel for the defendant to the right of the court to try the title leaves but one course to be pursued, though it is regretable because much testimony has already been taken in the cause.

An issue will be framed to be tried by a jury at the bar of the Superior Court, whether the complainants, Mary Ann Dill, Samuel Herman Dill, Alvertie Wroten, Homer C. Dill, Susan Ella Little and Leonard C. Dill and Emeline Dill, one of the defendants, are entitled to the land, and in the meantime a preliminary injunction will be ordered to preserve the estate in *statu quo;* and as no injury will be done to either party by a suspension of the rights of all parties to the land, the amount of the bond will not be large.