STATE of Delaware upon the relation of ARMOUR AND COMPANY, a Delaware Corporation, Relator Below, Appellant,

v.

GULF SULPHUR CORPORATION, a Delaware Corporation, Defendant Below, Appellee,

and

Lithium Corporation of America, Inc., a Minnesota Corporation, Intervening Defendant Below, Appellee.

GULF SULPHUR CORPORATION, a Corporation of the State of Delaware, Defendant Below, Appellant,

v.

ARMOUR AND COMPANY, a Corporation of the State of Delaware, Plaintiff Below, Appellee.

Supreme Court of Delaware.

June 5, 1967.

Richard F. Corroon, of Berl, Potter & Anderson, Wilmington, and Thomas Tyler, of Winston, Strawn, Smith & Patterson, Chicago, Ill., for Armour and Co.

Andrew B. Kirkpatrick, Jr., David A. Drexler and Walter K. Stapleton, of Morris, Nichols, Arsht & Tunnell, Wilmington, for Gulf Sulphur Corp.

Arthur J. Sullivan and Robert M. High, of Morris, James, Hitchens & Williams, Wilmington, for Lithium Corp. of America, Inc.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

CAREY, Justice.

The State, upon relation of Armour and Company (Armour), brought a mandamus action in Superior Court against Gulf Sulphur Corporation (Gulf) to force the latter to permit Armour, a stockholder of Gulf, to inspect certain records relating to a proposed merger of Gulf and Lithium Corporation of America, Inc. (Lithium). From an adverse judgment, Armour has appealed. (No. 43).

Before the decision in the mandamus case, Armour filed an action in the Court of Chancery against Gulf seeking an injunction against the holding of a special meeting of Gulf stockholders scheduled for April 27th, 1967 to vote upon the merger. The Superior Court's order was entered on April 25, 1967 and on the same day the Chancellor enjoined the meeting until May 22, 1967 to permit Armour to file its appeal and have it decided. Later that day, a Justice of this Court modified the order so as to permit

the meeting to take place as scheduled, but restraining the implementation of any affirmative action taken at that meeting until after our decision in No. 43. Gulf has appealed from this order as modified. (No. 44).

The issue in No. 43 is whether the Superior Court abused its discretion in denying permission to Armour to inspect the records it wanted to examine. The issue in No. 44 is whether the Court of Chancery erred in entering the injunctive order.

### No. 43

Armour produces chemical fertilizers through a wholly owned subsidiary. In the manufacture of fertilizers, Armour uses a large quantity of sulphur. Gulf has been producing sulphur for about eleven years with good financial results. It has recently discovered two mineralized areas which have considerably increased its sulphur reserves. In the spring of 1966, there was a scarcity of that chemical and Armour (not then a stockholder) tried unsuccessfully to buy it from Gulf. Soon thereafter, Armour's directors authorized the purchase of Gulf stock up to seven and one-half million dollars and Armour did purchase on the market about ten percent of Gulf's total outstanding stock at a cost of nearly four million. After the purchase, Armour asked that its personnel be allowed to review Gulf's sulphur data, to visit its mine, and to make certain other investigations with the object of working out some kind of arrangement whereby Armour would obtain a source of sulphur supply from Gulf. Gulf rejected that request for several reasons, one of which was that it was already under contract to supply the chemical to certain competitors of Armour. The latter attempted again unsuccessfully to obtain a contract with Gulf for sulphur. Finally, it suggested a plan whereby it would have acquired a greater interest in Gulf along with an "option" for sulphur. The Court below held that Armour's aim in becoming a stockholder of Gulf was to get sulphur and that this is still its basic desire. To accomplish

that purpose, it became a shareholder "to gain leverage in order to achieve an association which would permit Armour to gain sulphur". The Court pointed out, however, that this was not a wrongful purpose and that Armour does have a valid interest in learning all it can about the merger in order to effectively oppose it, should the facts warrant opposition. In other words, Armour has a valid interest as a stockholder, but it also has a separate interest as a manufacturer of fertilizer. This conclusion of fact is justified by the record and is emphasized by a statement of Armour's president to another Gulf stockholder that Armour would probably go along with the merger, if it could be assured of a supply of sulphur. The trial Judge held that the existence of this independent interest did not bar Armour's right to see the record but that it was a factor to be considered in balancing the equities.

Gulf had for some time been desirous of diversifying its activities. Several possible plans were considered and rejected. Late in 1966, it learned that Lithium was searching for financing. The latter company had dealt in lithium for a number of years. Since March 1965, it had been engaged in a joint venture with another company involving the development of certain techniques for extracting mineral salts from the Great Salt Lake in Utah and converting them into various products including potash, which is one of the basic ingredients of fertilizer. There are two kinds of potash-potassium sulphate and potassium chloride. The choride form is much more widely used than sulphate; the former is cheaper but the latter is better, at least for certain crops. At present the production of potassium sulphate is contemplated at the Utah project, although production of potassium chloride may take place. Armour is itself a producer of potassium chloride through a joint venture with another corporation.

The techniques developed by Lithium during the past two years at a cost of some three million dollars are considered by Lithium to be very valuable because they

promise substantial economies in production; conceivably, they could enable a producer to sell potassium sulphate at a price rivaling the price of potassium chloride. For this reason Lithium has gone to great lengths in keeping the techniques secret. Lithium was eager to commence commercial operations in Utah but was financially unable to build the necessary physical facilities. Through an investment banker, negotiations were commenced between Gulf and Lithium concerning a possible merger. Of course, to enable Gulf to evaluate the proposed enterprise, Lithium had to divulge its secret information to Gulf's officers. Before doing so, it insisted upon and received an agreement that the information would be held in confidence. The data supplied to Gulf convinced its officers of the desirability of the merger and, after "arm's length" negotiations, an agreement of merger was entered into, subject of course to ratification by stockholders.

When the news of the proposed merger became public, Armour requested full information concerning it. The request was denied, and Armour instituted this action. It originally sought an examination of a rather large variety of reports and documents but has now abandoned all requests other than certain studies and reports pertaining to the Utah project. It charges that the information contained in the proxy statement sent to Gulf's stockholders by its management is insufficient to enable it to form an independent opinion of the wisdom of the proposed merger and that a review of the requested records is necessary to a proper appraisal. Most of the reports were made by or for Lithium; those made by or for Gulf were based upon the information supplied by Lithium.

In making his decision, the trial Judge summarized the factors for and against Armour's demand. In its favor were these: (1) Armour is a substantial stockholder of Gulf with an interest in the value of its investment; (2) since a merger requires stockholders' approval, it is a matter of specific rather than general stockholder interest; (3) Armour is something more than a typical stockholder because it has unusual means at its command to make a sophisticated managerial judgment; (4) the proxy statement does not provide Armour with the information it desires in evaluating the Utah project—the main motive for the merger; (5) it may be that Armour's proposal for Gulf's future is the best policy for Gulf and Armour has a right to try to convince other stockholders that their interest would be best served thereby.

The opposing factors were these: (1) the contract of secrecy between Gulf and Lithium is entitled to consideration, especially since Lithium, who has the most to lose by a disclosure, is at this time an independent corporation entangled in an intracorporate fight; (2) the possible interest of Armour in the Utah project and the discoveries which have been made, independent of its stockholder status, must be kept in mind; (3) Lithium relied upon Gulf's promise of secrecy concerning its discoveries, which are the only meaningful product of its past operations in Utah costing three million dollars; (4) even in the case of mergers, stockholder's right to information is not absolute or complete; (5) if the merger is consummated, Armour's loss is not total, for it is not compelled to acquiescence therein but has the right to demand the fair value of its stock.

After weighing these factors, the trial Judge held that Armour's interest as a stockholder was overbalanced by those factors which favored nondisclosure. As a matter of discretion, he accordingly denied the writ.

In seeking a reversal, Armour necessarily charges an abuse of discretion by the Court below. State ex rel. Theile v. Cities Service Co., 1 W.W.Harr. 514, 115 A. 773, 22 A.L.R. 8. We must determine whether the order was arbitrary, capricious or unreasonable, in view of the facts and the relevant rules of law. Radio Corporation of America v. Philadelphia Storage Battery Co., 23 Del. ch. 289, 6 A.2d 329.

Armour agrees that a stockholder's right is not absolute but argues that, under the facts of this case, the officers and directors are duty bound to make full disclosure to it as a stockholder and have no right to decline to do so. It contends that the agreement of secrecy furnishes no excuse because its officers have no power to make a binding promise to conceal pertinent information from stockholders. But the Court below did not hold that the agreement in fact barred disclosure to stockholders; if it had so held, there would have been no occasion to discuss anything else. The existence of that contract was only one of the several factors which he took into consideration in balancing the equities of the parties.

Armour suggests that Lithium must have known, when the agreement was made, that full disclosure would have to be furnished on demand to stockholders before a merger could be voted upon, wherefore it could not have intended the agreement to apply against stockholders. The trial Judge held that "it was obviously not the intention of the parties * * *. to provide for disclosure to Gulf's stockholders". We agree. Considering the expenditures made by Lithium to acquire its knowledge, as well as its potential value, which could be diminished or destroyed by disclosure to the large number of Gulf stockholders, we cannot think that Lithium had any intention of allowing it to go so far, especially since Lithium could not know whether the merger would or would not be accomplished. Certainly, the language of the agreement itself does not suggest such an intent. As Lithium points out, most of the records which Armour wants to see are actually the property of Lithium not Gulf. Those reports which Gulf itself compiled are based upon the information furnished by Lithium, and an examination of them would undoubtedly reveal much of the substance of Lithium's records. We do not go so far as to hold that the existence of an agreement of this sort prevents disclosure to stockholders in

any and all cases; we merely indicate our agreement that the trial Judge was justified in considering it as one factor in the whole picture.

Armour questions whether the agreement applies to all the information it now seeks. This point was not raised or decided in the Court below and we decline to consider it.

In arriving at his final conclusion, the trial Judge was faced with a difficult problem. He recognized that Armour's position was not without merit, but found that justice required a decision in favor of Gulf and Lithium. We are unable to say that his exercise of discretion in this manner was arbitrary, capricious or unreasonable or that he erred in applying appropriate legal principles. We, therefore, cannot reverse his decision. The judgment in this case will be affirmed.

## No. 44

Gulf contends that the Court of Chancery was without jurisdiction to issue injunctive relief, and in any event should not have done so in this case. This order was entered to maintain the status quo pending final adjudication of the parties' rights in the proceeding at law. The power of equity to grant such relief in a proper case was recognized and exercised in Mayor, etc. of Wilmington v. Addicks, (not officially reported), Del.Ch., 47 A. 366, 374, the Chancellor describing it to be a "familiar and unquestioned ground of equitable jurisdiction". See also Dill v. Dill, 10 Del.Ch. 257, 91 A. 450; 1 High on Injunctions (4th ed.) 13 and 28 Am.Jur. 505. Whether the Court was justified in exercising that power here need not be determined because our decision in No. 43 renders the question moot. The case will be remanded with instructions to dissolve the injunction.