PHILADELPHIA, WILMINGTON & BALTIMORE RAILROAD COM-
PANY

*vs.*

PATRICK NEARY, Collector, etc.

New Castle, March T. 1886.

*Taxation; commutation of taxes on railroad; exemption from*
*additional taxation; restraining unlawful assessment and*
*collection.*

By section 1 of an Act of the General Assembly of the State of Delaware,.
passed April 11, 1873, it was enacted "that the treasurer of the State-
be, and he is hereby, authorized and directed to accept and receive
from the Philadelphia, Wilmington & Baltimore Railroad Com--
pany, in the year of our Lord 1873 and in each and every year there-
after, until otherwise directed by the Legislature, the annual sum of
$27,000, to be paid in equal quarterly payments on the first day of
July, October, January, and April of each year,—the first payment
to be made on the first day of July next,—in lieu of all taxes which
may hereafter become due from said company in each year as afore--
said, under any and all laws of this State, except such taxes as may
become due under the provisions of an Act entitled 'An Act to-
Raise Revenue for this State,' passed August 11, 1864." And by
section 2, thus: "Upon the payment by the said Philadelphia,
Wilmington & Baltimore Railroad Company to the treasurer of the-
State of the said sum of $27,000 in equal quarterly payments as-
aforesaid in any year, it shall be the duty of the said state treasurer,
and he is hereby authorized, to execute and deliver to said company
a proper acquittance and discharge from the payment of all taxes
due or to become due in the year for which such payment shall have-
been made, except the taxes due or to become due under the provis-
ions of the aforesaid Act," etc. *Held:*

(*a*) That, upon the payment of the amount therein specified, the-
company was exempt as such from all other taxes, and could not
thereafter be assessed for local purposes.

(*b*) That this exemption applied only to the roadbed and appurte-
nances, and did not include other real estate owned by the company,
and that this latter might be lawfully assessed for all purposes.

(*c*) That while there is an adequate remedy at law for persons-
compelled to pay taxes unlawfully assessed, yet in a case like this,
when the line of the road runs through different tax districts, in all of
which it may be assessed, a court of equity will interfere by injunc-
tion to prevent the unlawful assessment and collection.

BILL FOR AN INJUNCTION.—The complainant is a corporation existing under the Laws of the States of Pennsylvanai,. Delaware, and Maryland, and the bill is filed agairtst Patrick. Neary, Collector of County Taxes for the Northern or Second Collection District of Wilmington Hundred, New Castle County, to restrain' the collection of certain taxes. The facts. are stated in the opinion.

*George V. Massey*, for the complainant:

I. The power of the Legislature to exempt corporations. and their property from taxation, in whole or in part, for limited periods, or permanently, cannot now be seriously questioned. *Delaware R. Tax Case*, 85 U. S. 18 Wall. 225 (21 L. ed. 894); *State* v. *Smyrna Bank*, 2 Houston, 99; *Home of the Friendless* v. *Rouse*, 75 U. S. 8 Wall. 430 (19 L. ed. 495), and cases there cited.

The Act of 1873 (until qualified or repealed by further legislation) constitutes a contract between the State and the corporation complainant, whereby it is exempted from the payment of any other taxes than those prescribed by the said Act.

II. While it is not denied that there is power in the Legislature to enact such a law as will authorize the assessment of the roadbed, or right of way, of the complainant corporation, it is contended that there has been no such enactment.

The roadbed or right of way of the corporation complainant is not real estate within the purview and contemplation of Revised Statutes, chap. 11, p. 84, § 1, for the reasons following: (*a*) It is acquired and held under the charter for a special purpose. (*b*) The purpose for which it is so held and used is limited and defined by law. (*c*) It is by law declared to be a "public highway for the conveyance of passengers. and transportation of merchandise and commodities under such regulations as shall be prescribed by the directors;" and no part thereof can be appropriated or devoted by the corporation to any other purpose. (*d*) The only interest the complainant lawfully has therein is its use as a highway,—an

easement,—and that for the public convenience; whenever it ceases to be so used all control thereof by the said corporation ceases. (*e*) It cannot be sold, aliened or leased by the complainant, and the complainant therefore has no right, title, or interest therein save as a trustee *sub modo*, to the end that it may be so used and employed as will subserve the public convenience and answer the requirements of the Act under authority, of which a large part of it, at least, was taken as private property for public use. (*f*) The use of its roadway is absolutely and essentially incident to the exercise, by the complainant, of the franchise conferred by its charter; and a tax upon such roadbed would practically be a "franchise tax," whereas it is not pretended that any existing law of this State authorizes the direct taxation of corporate franchises. (*g*) In the light of its charter, the roadbed or right of way of the complainant corporation is analogous to a turnpike, or the bed of a canal with its appurtenances. (*h*) That as such roadway forms part of a continuous line of railroads between the States of Pennsylvania and Maryland, to the formation and establishment of which this State has given its sanction and assent, it constitutes a means and medium of interstate commerce; and the imposition of a tax upon it specifically is a regulation of commerce between the States. *Com.* v. *Wilkinson*, 16 Pick. 175; *Worcester* v. *Western R. Co.* 4 Met. 564; *Lowell Meeting House* v. *Lowell*, 1 Met. 538; *Lehigh Coal & Nav. Co.* v. *Northampton County*, 8 Watts & Serg. 334; *Railroad* v. *Berks County*, 6 Pa. 70; *Schuylkill Nav. Co.* v. *Berks County*, 11 Pa. 202; *Delaware & H. Canal Co.* v. *Wayne County*, 15 Pa. 351; *West Chester Gas Co.* v. *Chester County*, 30 Pa. 232; *Carbon Iron Co.* v. *Carbon County*, 39 Pa. 251; *State* v. *Middle Twp.* 9 Vroom, 270; *Delaware R. Tax Case*, 85 U. S. 18 Wall. 225 (16 L. ed. 894), and cases therein referred to.

*John H. Rodney,* for the defendant:

The defendant claims that the complainant is a private corporation, since the stock is held by private individuals; the

profits of the same are divisible among private individuals; and it is wholly under the control of private parties. Ang. & A. Corp. § 31; 25 Wis. 167; 12 Iowa, 112.

Being a private corporation, the words " public highway " in the Act of incorporation are suggestive merely, and qualified and limited by the terms of the said Act.

. Being a private corporation, the property of the complainant is properly assessable and taxable under the Act of the General Assembly in reference to the valuation of property; it not coming under any of the exceptions therein named. Rev. Code, chap. 11.

The corporation complainant is not exempt from taxation by the Act of April 11, 1873.   This appears upon a proper construction of the Act itself and with reference to the Acts passed August 11, 1864 (Rev. Code, p. 30), and the Act passed April 4, 1869 (Rev. Code, p. 44); by the construction the complainant itself has put upon the said Act, in that, since its passage, it has paid taxes assessed upon its real estate other than the roadbed; and by the construction put upon the said Act by the joint resolution of the Legislature adopted April 11, 1883 (17 Del. Laws, p. 562).

If there is any doubt, it should be construed in favor of taxation.   85 U. S. 18 Wall. 226 (21 L. ed. 895).

The roadbed of a railroad is property to be assessed and taxed as real estate.  *Farmers Coan and Trust Co.* v. *Hendrickson,* 25 Barb. 493 ; *People* v. *Beardsley,* 52 Barb. 106 ; *People* v. *Cassity,* 46 N. Y. 46 ; *Smith* v. *New York,* 68 N. Y. 555 ; *People* v. *New York,* 19 Hun, 460 ; *New Haven* v. *Fair Haven & W. R. Co.* 38 Conn. 431 ; *Providence & W. R. Co.* v. *Wright,* 2 R. I. 459 ; *Illinois Cent. R. Co.* v. *McLean County,* 17 Ill. 296 ; *Orange & A. R. Co.* v. *Alexandria,* 17 Gratt. 177 ; *Philadelphia, W. & B. Co.* v. *Bayless,* 2 Gill, 355 ; *Burlington & M. R. Co.* v. *Spearman,* 12 Iowa, 112 ; *Sangamon & Morgan R. Co.* v. *Morgan Co.* 14 Ill. 163 ; *Chicago* v. *Baer,* 41 Ill. 313.

The same principle is settled in England.   *Charing Cross Bridge Co.* v. *Mitchell,* 82 E. C. L. 549 ; 51 E. C. L. 785.

The taxation of such roadway is not in any sense a regulation of commerce between the States.　85 U. S. 18 Wall. 232 (21 L. ed. 896).

THE CHANCELLOR. — It is stated in the bill, and admitted by the answer filed in this cause, that so much of the road-bed of the main line of railroad, and the several sidings and branches thereof, belonging to and operated by the complainant, as is located within the territorial limits of the Second or Northern District of Wilmington Hundred, has been assessed for county purposes for the year 1885, at a valuation of $54,282 ; and that certain real estate within the said district belonging to the said corporation has likewise been assessed for like purposes, for the same year, at a valuation of $700.

The Levy Court of New Castle County has laid and apportioned a tax upon the said assessments as follows.: a tax at the rate of twelve cents upon every $100 thereof, as and for the poor tax ; and a tax at the rate of thirty-eight cents upon every $100 thereof, as and for a county tax, making the aggregate a tax at the rate of fifty cents upon every $100 of the said assessment.

The aggregate amount of the taxes so laid and apportioned as aforesaid is $279.55, and whereof $271.41 are rated and apportioned upon the sum of $54,282, the valuation of the roadbed or right of way ; and $8.04 are rated and apportioned upon the sum of $700, the valuation on certain real estate of the complainant located within said collection district, not being a part of or connected with the said roadbed or right of way.

The complainant seeks to enjoin the collection of said taxes by the defendant, collector of said collection district, upon two grounds : (1) that, by the payment of a gross annual sum, it is expressly exempted from all other taxes until the Legislature shall otherwise direct ; and (2) that as to so much of the said tax as is assessed upon a valuation of its roadbed, there is no authority of law for such assessment.

The second ground, in my opinion, is untenable ; and I decline to adopt the rulings in the cases cited from the Massachusetts and Pennsylvania Reports upon this subject, as properly applicable in this State. Numerous contrary decisions are to be found in the reports of other States, and more consonant with our own laws applicable to this subject.

By section 1, chapter 11 of our Code, it is provided that "All real and personal property not belonging to this State or the United States, or any county, church, religious society, college, or school, or to any corporation for charitable uses, shall be liable to taxation and assessment for public purposes."

The roadbed of the complainant is real property, and does not come within any of the exceptions contained in chapter 11 of the Code, and is liable to taxation and assessment for public purposes, unless exempted by the provisions of some other Act of the General Assembly of this State.

And this brings me to the consideration of the true interpretation of the Act of April 11, 1873.

That Act is entitled "An Act Relating to the Taxes of the Philadelphia, Wilmington & Baltimore Railroad Company."

Section 1 is as follows : "That the treasurer of the State be, and he is hereby, authorized and directed to accept and receive from the Philadelphia, Wilmington & Baltimore Railroad Company, in the year of our Lord 1873, and in each year and every year thereafter, until otherwise directed by the Legislature, the annual sum of $27,000, to be paid in equal quarterly payments, on the first day of July, October, January, and April of each year,—the first payment to be made on the first day of July next,—in lieu of all taxes which may hereafter become due from said company in each year, as aforesaid, under any and all laws of this State, except such taxes as may become due under the provisions of an Act entitled 'An Act to Raise Revenue for this State,' passed August 11, 1864."

By section 2 it is provided that, "Upon the payment by the said Philadelphia, Wilmington & Baltimore Railroad

Company, to the treasurer of the State, of the said sum of $27,000 in equal quarterly payments as aforesaid in any year, it shall be the duty of the said state treasurer, and he is hereby authorized, to execute and deliver to said company a proper acquittance and discharge from the payment of all taxes due or to become due in the year for which such payment shall have been made, except the taxes due or to become due under the provisions of the aforesaid Act, entitled ' An Act to Raise Revenue for this State,' passed August 11, 1864."

The counsel for the defendant, in his very ingenious and plausible argument, arrived at the conclusion that the taxes for which exemption is given in this Act are special taxes laid upon the company by special Acts of General Assembly; and that the Acts referred to in the Act of 1873 are such Acts as by their very terms impose taxes, and for state purposes; and he sought confirmation of his construction by a consideration of the provisions of section 3 of the Act of 1873. That section is as follows : " That nothing in this Act shall be construed to repeal, modify or in any manner affect any existing law imposing taxes upon the said company, otherwise than to suspend a collection of such taxes in any year in which the said company shall pay to the state treasurer the amount specified in this Act; nor shall the provisions of this Act, or anything herein contained, be construed into a contract exempting the said company from the payment of such taxes as the Legislature of this State may hereafter impose upon said company."

He contends, also, that the payment by the company, of other taxes, strengthens this construction, and that the Legislature has given a construction to the same effect by the passage of the Joint Resolution of April 11, 1883.

I cannot agree with the counsel for the defendant in some of these respects, but must interpret the Act of 1873 according to its own provisions. It is true that the state treasurer has not, under his general authority, power to execute and deliver acquittances and discharges from the payment of mere county taxes; but it does not follow that the Legislature of the State may not, by law, except a corporation from the pay-

ment of all taxes which may become due from it in each year under any and all laws of the State, or that it may in such Act of exemption except such taxes only as it shall see proper to except.

The levy court of a county can levy a tax only by virtue of some law of the State. The collector of a county tax can collect such tax only by virtue of some law of the State; and I think there can be no doubt that the Legislature may, if it chooses so to do, for any purpose which it may deem beneficial to the State, in consideration of the payment of a sum in gross by any corporation or person, natural or artificial, authorize the acceptance of such sum in gross, in lieu of all taxes which may thereafter become due from said person, natural or artificial, under any and all laws of the State, and may except such taxes only as may become due under the provisions of any Act which it may choose to designate.

The only effect which can be given to section 3 is that, while the sum in gross should be paid to the state treasurer in lieu of all taxes under any and all laws of the State shall be continued to be paid to the state treasurer, the payment of other taxes shall be suspended; but that the provisions of the Act, or anything therein contained, shall not be construed into a contract exempting the company from the payment of such taxes as the Legislature might thereafter impose upon the company.

The Joint Resolution referred to in the argument does not operate as a legislative construction of the Act of 1873, but only as a commutation of taxes due and in arrear, upon the basis therein named. The Joint Resolution referred to was adopted by the Legislature, April 19, 1883, more than ten years after the passage of the Act of 1873; and there can be no doubt that the Legislature of 1883 supposed that the Act of April 11, 1873, had reference only to taxes imposed by the Act of April 8, 1869; for in the preamble to the Joint Resolution, they say: " Whereas, by an Act of the General Assembly passed at Dover April 11, 1873, the state treasurer was directed and empowered to receive from the Philadelphia,

Wilmington & Baltimore Railroad Company the sum of $27,000 annually in lieu of all taxes against said company, under the Act of April 8, 1869, by equal quarterly install-ments; therefore, be it resolved," etc.

I have no doubt it was the intention of the Legislature of 1883 to place all railroad corporations and canal companies of the State upon an equal footing in respect to taxation; for in the fourth Resolution they say : " That when any such com-pany shall have fully complied with and conformed to the re-quirements of the preceding resolve, the state treasurer shall thereafter accept and receive from each of the said companies, by equal quarterly payments in each year, commutation of the taxes under the Act of April 8, 1869, on the basis hereinafter stipulated."

If they failed to secure this equality it was by interpreting the Act of April 11, 1873, as having particular reference to the Act of April 8, 1869, and not to any and all laws of this State except the Act of August 11, 1864.

The first and second sections, before recited, of the Act of April 11, 1873, are to be interpreted by the clear meaning of the words of the Act as used, and not by conjecture, warranted perhaps by circumstances *dehors* the Act.

If the Legislature had intended to except any taxes other than those which might become due under the provisions of an Act to raise revenue for this State, passed August 11, 1864, it is reasonable to suppose that they would have said so in the Act; and it was their plain duty so to have said.    They have in fact, however, excepted only such taxes as may become due under that Act, and afterwards, in section 5, provided " that if the said Philadelphia, Wilmington & Baltimore Railroad Com-pany may desire to pay to this State a gross sum of $13,000 in lieu of the said tax provided for in said 12 Laws of Delaware, chap. 458 (being the same Act which they had before excepted, passed August 11, 1864), in semi-annual installments, on the first day of October and the first day of April in each and every year, it shall be the duty of the state treasurer to receive the said amount from said company, in lieu of said tax, until oth-erwise directed by the Legislature of this State.

It is not for the judiciary to limit and restrict the plain and unambiguous language employed by the Legislature in their enactments, but to give to the words used in such enactments a plain, fair and reasonable construction. It is for the court to declare the meaning of an Act of the Legislature, and not to usurp the functions of the Legislature by presuming to make law contrary to that made by the lawmaking power.

I therefore decide in this case that when the Legislature, by section 1 of the Act of 1873, declared that the treasurer of the State be, and he is hereby, authorized and directed to accept and receive from the Philadelphia, Wilmington & Baltimore Railroad Company, in the year of our Lord, 1873, until otherwise directed by the Legislature, the annual sum of $27,000, to be paid in equal quarterly payments on the first day of July, October, January, and April of each year,—the first payment to be made on the first day of July next,—in lieu of all taxes which may hereafter become due from said company in each year as aforesaid, under any and all laws of this State, except such taxes as may become due under the provisions of an Act to Raise Revenue for this State, passed August 11, 1864; and that the said company having paid said sum to the said treasurer, according to said Act, as appears by the acquittance and discharge of the said treasurer, filed in this cause,—the said company became and was discharged from the payment of all taxes due in the year for which such payment was made, except the tax due or to become due under the provisions of the Act entitled " An Act to Raise Revenue for this State," passed August 11, 1864; and that, when the said company paid a gross sum of $13,000 in lieu of said tax due under the provisions of the aforesaid Act, entitled "An Act to Raise Revenue for this State," passed August 11, 1864, such payment operated as an acquittance and discharge in lieu of all taxes under any and all laws of this State.

This opinion is confined to the special matter before me,—namely, the tax levied and appropriated by the Levy Court of New Castle County, as stated in the bill of complaint in

respect to the roadbed of the said company, complainant,— and is not to be understood as applying to the other real estate owned by the company, not a part of said roadbed, as mentioned in said bill.

This limitation I consider proper, because the legislation upon this subject must have a reasonable and a fair construction; and it is not to be presumed that the Legislature intended that the company should be exempted from taxation in respect to property which it might become possessed of as owner, and not necessarily incident to the right of operating its railroad. . If the company became the owner of property disconnected with its road and its operation, which property would be taxable if owned by natural persons,—would be subject to taxation,—it is not to be presumed that it was the intention of the Legislature to exempt such property from liability to taxation simply for the reason that the complainant became the purchaser and owner thereof.

Before the counsel in the cause proceeded in their argument, I intimated to them that I should dissolve the preliminary injunction heretofore awarded and dismiss the bill, unless the case was brought under some recognized head of equity jurisprudence,—as where there would otherwise be a cloud upon the title, or a multiplicity of suits, or any irreparable injury.

The ordinary remedies in the case of taxes illegally assessed and levied are an action at law after a compulsory payment, either of trespass against the collecting officer, or of assumpsit against such officer or the public corporation to which the amount has been paid.

These remedies, says Pierce on Railroads, 488, are ordinarily ample, and do not involve the public embarrassments incident to the intervention of equity in such cases.

Equity will not therefore enjoin the collection of a tax alleged to be illegal, where there is an adequate remedy at law. It will not interfere by its preventive process, on account of mere irregularities, hardship, and injustice in the assessment, or errors or excess in valuation.

It would be impossible, if I were to attempt it, to reconcile the various and conflicting decisions which have been made by the courts in the different States upon the subject of equitable jurisdiction in such cases.

This want of uniformity of decisions in this country has arisen from the want of distinct equitable tribunals to adjudicate such questions, and from the blending of legal and equitable powers in the same tribunals.

The principles I have announced upon this subject will govern my actions whenever similar questions shall arise before me.

The solicitors for the parties, respectively, have filed among the papers in the cause an agreement which is in the following words: "It is agreed and understood that there are divers other taxes assessed against the corporation, the complainant, and other corporations owning like property in the County of New Castle, in the hands of several other collectors in the said County of New Castle for collection; and that in order to avoid a multiplicity of suits, and prevent unreasonable litigation, it has been agreed that these facts are to be taken to be admitted in this case with the like effect as if the same had been stated in the bill of complaint and admitted by the answer. And it is also agreed and understood and so stipulated that this cause shall be considered just as though all the parties who are in like case as complainant and defendant had been parties thereto."

I have not given any weight to the suggestion made by the counsel for the complainant, that the tax imposed would affect commerce among the States, and impede the transit of persons and property from one State to another. It does this, in the language of *Mr. Justice* Field in the case of *Minot* v. *Philadelphia, W. & B. R. Co.* 85 U. S. 18 Wall. 232 (21 L. ed. 896), " just in the same way, and in no other, than taxation of any kind necessarily increases expenses attendant upon the use or possession of the thing taxed. That taxation produces this result of itself constitutes no objection to its constitutionality." "As was very justly observed," he remarks,

"by this court in a recent case, 82 U. S. 15 Wall. 293 (21 L. ed. 167), 'every tax upon personal property, or upon occupations, business or franchises, affects more or less the subjects and the operations of commerce. Yet it is not everything that affects commerce that amounts to a regulation of it, within the meaning of the Constitution.' The exercise of the authority which every State possesses to tax its corporations and all their property, real and personal, and their franchises, and to graduate a tax upon the corporations according to their business or income, or the value of their property, when this is not done by discriminating against rights held in other States, and the tax is not on imports, exports or tonnage, or transportation to other States, cannot be regarded as conflicting with any constitutional power of Congress."

The agreement referred to by counsel having been filed, and having for that reason taken jurisdiction of the cause, I shall, for the reasons before stated, decree that the preliminary injunction heretofore granted, restraining the defendant from collecting the sum of $271.41, rated and apportioned upon the sum of $54,282, the valuation of the roadbed, be made perpetual; and that the said preliminary injunction be dissolved as to the sum of $8.04, rated and apportioned upon the sum of $700, the valuation on the other real estate of the complainant located within the collection district mentioned in said bill; and it is ordered that the parties, complainant and defendant, each pay one half of the costs in this cause within three months, or attachment.