### 7536

### McLAURIN v. TATUM.

1. SCHOOL DISTRICT BONDS.—UNDER THE ACT OF 1907, 25 STAT., 522, providing for issuing bonds by school districts, it is requisite that the trustees have a plat of the district made by actual survey immediately preceding the election. Filing a plat of the district made up by a surveyor from notes of previous surveys will not suffice.

2. IBID.—Findings by trustees and master that one-third of the electors and freeholders of the school district had signed the petition for election on issuance of bonds, sustained.

3. IBID.—ELECTIONS—WORDS AND PHRASES.—UNDER THE TERMS OF THE ACT OF 1907, 25 STAT., 522, relating to issuing of bonds by school districts the terms "qualified voter" means the same as "qualified elector" in the Constitution and general election statutes. In such election all electors are entitled to vote who have registration certificates and have paid all taxes, including poll tax, assessed against him and payable during the previous year. Restricting the election to registered electors paying taxes on real or personal property is error.

Petition for injunction by H. L. McLaurin, D. L. McLaurin and others, taxpayers of the school district of McColl, against W. G. Tatum, L. M. Morrison and B. F. Smoot, as trustees of the school district in the original jurisdiction of the Court, to enjoin the issuance of bonds.

*Messrs. Stevenson, Mattheson,* and *Stevenson,* for petitioner.

*Messrs. T. I. Rogers* and *C. P. Townsend,* contra.

April 5, 1910. The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES. The petitioners, in the original jurisdiction of this Court are seeking as resident taxpayers of McColl school district in Marlboro County to enjoin the respondent trustees of that school district from issuing twelve thousand dollars of the bonds of the district as the result of an election under the act 1907.

An order was passed referring it to J. K. Owens, Esq., as special master to take the testimony and report his conclusions of fact. In obedience to this order the special-master took a mass of testimony and with it has reported his conclusions of facts. The respondents filed numerous exceptions to this report.

In the view we take of the case it will not be necessary to consider all these matters.

The real question is whether the proposed issue of bonds is invalid by reason of any fatal failure to comply with the act approved February 19, 1907, entitled "an act to provide for the issuing of bonds in public school districts in South Carolina."

The first section of the act provides: "That the trustees of any public school district in the State of South Carolina are hereby authorized and empowered to issue and sell coupon bonds of the said school district, payable to bearer in such denominations and amount as they may deem necessary, not to exceed four per cent. of the assessed valuation of the property of such school district for taxation, and bearing a rate of interest not exceeding six per cent. per annum, payable annually or semi-annually, and at such times as they may deem best: *Provided,* That the question of issuing the bonds authorized in this section shall be first submitted

to the qualified voters of such school district, at an election to be held upon the written petition or request of at least one-third of the resident electors, and a like proportion of the resident freeholders of the age of twenty-one years, to determine whether said bonds shall be issued or not, as herein provided: *Provided further,* That before any election is held under this act it shall be the duty of the trustees of the school district to have a survey of said school district made by some competent surveyer, and a plat thereof made, and filed in the office of clerk of Court."

One of the petitioners' contentions is that the trustees did not have a survey of the school district made, and a plat filed as required.

We first notice this ground. The special master on this point reported the facts as follows: "On the third day of May, 1904, the county board of education met at McColl to determine the boundaries of this school district, and certain roads, lines and courses were fixed. Soon thereafter, surveyor, J. R. Parker, was employed by the county superintendent of education to make a plat of the district. A copy of his first work is plat marked Exhibit X. This plat differs from plat B. which was made by the same surveyor, and certified to on the first day of the next month, June 1, and on July 15 the county board of education approved this plat as appears from endorsement signed by all of the members, and also by the minutes of the board. Several witnesses stated that plat X is in accordance with the directions and lines fixed May 3d. W. L. Stanton, who was county superintendent of education at the time, testified that he did not so understand the direction. Plat of Tatum school district, which joins McColl district at the disputed point was introduced, and it agrees with plat B. If plat X be accepted there is an unexplained conflict in the two districts. According to the testimony of W. L. Stanton, I find that plat X was never approved by his board, and was never filed in his office —this copy has no endorsement that would tend to show

that it was ever approved or filed. Plat B is the only plat approved by the county board of education in regard to McColl school district."

The special master found "the trustees secured plat B, which had been made in 1904 by Capt. John R. Parker, a competent surveyor, from field notes, surveys and plats he had made himself at different times during the past forty years, which notes, surveys and plats covered all the lands in McColl school district and all lines necessary except one, which he made from other lines and courses which he had. This plat was filed by the trustees in the office of the clerk of court for Marlboro County on March 10th, 1909."

This, however, is not sufficient to satisfy the statute. The express requirement is that the trustees shall have a survey of the school district made, and a plat thereof made and filed before the election. Instead of following the statute the trustees merely adopted one of two conflicting plats which had been made some years previously. The object of the statute was to have an actual survey and plat made therefrom. By this means it could be ascertained definitely who were the resident freeholders, and electors, and what property was included within the district lines. The actual survey too would have had the effect of arresting the attention of those living along the lines as to whether they were within or without the lines.

But whatever the purpose of the act, it is sufficient to know that such actual survey and plat under the authority of the trustees was a condition prerequisite to a valid election.

With respect to the contention that the petition for election was not signed by one-third of the resident electors and one-third of the resident freeholders, we are disposed to accept the conclusion of the master from the data before him that the required number did sign; but the fact that the survey and plat of the district had not been made as required by law renders the determination of the matter more or less uncertain. However, the trustees,

whose duty it was to ascertain this fact, have determined it against the petitioners, and the evidence produced satisfied the master that the trustees were right in this regard, and is insufficient to enable this Court to conclude to the contrary. The election, therefore, should not be declared void on this ground.

In view of the possibility of another election it may be well to determine the issue as to who are qualified to vote in such election.

The statute of 1907, section 1, requires the matter of issuing bonds to be submitted "to the qualified voters of such school district," and in section 2 the act declares: "In which election only qualified voters residing in such school district shall be allowed to vote."

The term "qualified voter" means in this statute the same as "qualified elector." With respect to qualifications to vote the same rules apply in special as in general elections. *Wright* v. *Board Canvassers,* 76 S. C., 586, 57 S. E., 536; *State* v. *Board Canvassers,* 78 S. C., 461, 59 S. E., 145, 14 L. R. A. (N. S.), 850n.

These cases further show that as a prerequisite of the right to vote the elector must present to the managers his resignation certificate and proof of the payment of all taxes, including poll tax assessed against him, and collectible during the previous year.

The report of the master states that the managers allowed any and all persons to vote provided they had a registration certificate and had paid taxes on property other than poll tax. It appears clearly that the rule adopted by the managers was to allow to vote those only who presented a registration certificate and tax receipts for previous year, showing they had paid taxes on real or personal property.

We find no authority for this either in the statute authorizing this election, or in the Constitution or general laws governing the matter. The language of the constitution is "payment of all taxes including poll tax, assessed against

him and collectible during the previous year." There may
have been no taxes assessed against the voter and collectible
for the previous year upon real and personal property. The
registered electors may not have been liable for poll tax. The
managers evidently sought to apply the provisions of the act
of February 20, 1907, amending section 1208, Code of
Laws, providing for the voting of special taxes for school
purposes in which occurs this language: "At which said
election only such electors as return real and personal prop-
erty for taxation and who exhibit their tax receipts and
registration certificates as required in general elections, shall
be allowed to vote." This provision, however, does not apply
to and cannot be read into the act of February 19, 1907,
under which this election was held.

While the vote was very close, fifty-two for bonds and
forty-eight against it, it does not appear that the managers
rejected more than one, possibly two, on this ground, who
would have voted against bonds, hence it is not made to
appear that the rule of the managers probably had the effect
of altering the result.

A number of other matters were discussed, but we do not
think a consideration of them material or important at this
time.

The judgment of the Court is that the respondents are
hereby perpetually enjoined from issuing the bonds in
question, and that petitioners have judgment for the
costs of this proceeding, including the sum of one hundred
and fifty ($150.00) dollars as compensation to J. K. Owens,
Esq., for services as special master under the order of this
Court.