JAMES C. McCOMB, a citizen and taxpayer of the Claymont Special School District, in Brandywine Hundred, New Castle County and State of Delaware,

*vs.*

WILLIAM G. ROBELEN, WILLIAM S. HAIGH, ROBERT C. MCFALLS, members of the Board of Education of the Claymont Special School District in Brandywine Hundred, New Castle County and State of Delaware, and WILLIAM H. DUTTON, specially appointed collector for the School Tax of the Claymont Special School District in Brandywine Hundred, New Castle County and State of Delaware.

*New Castle, March 10, 1922.*

Under 32 *Del. Laws, c.* 160. § 54, providing for a special tax levy election in school district, and providing that "every person qualified to vote at the school election in the district shall be qualified to vote," and *Section* 19, entitling all "qualified voters" to vote at an election, a resident of the district otherwise qualified could vote at such tax election, though not registered, in view of *Constitution, Article* V, §§ 1—4, and 21 *Del. Laws, c.* 36, § 1, as amended.

"Registration" is not one of the "qualifications" of a voter prescribed by *Article* V of the Constitution of this State; it is only evidence of the existence of the qualifications.

The phrase "qualified voter" found in the school law of this state (*Chapter* 160, *Volume* 32) does not mean a registered voter.

That a tax is illegal and void is not in itself enough to invoke the aid of equity, unless the tax and its threatened collection are such as to bring the case within one of the recognized heads of equity jurisdiction.

Taxes do not constitute a lien on assessed property, unless expressly made so by statute.

A statute to create a tax lien must expressly provide for the lien, or the implication must be so plain as to be tantamount to positive language.

32 *Del. Laws, c.* 160, § 54, authorizing a school district to levy additional taxes, if empowered so to do at special election, and providing that "in collecting the said tax he [the collector] shall proceed in the manner and have all the powers of the collector of county taxes," *held* not to make the tax a lien on the assessed property, even though county taxes are specifically made a lien.

INJUNCTION BILL. The complainant seeks to restrain the collection of a tax sought to be levied and collected under the

provisions of *Section* 54, *Chapter* 160, *Volume* 32, *Laws of Delaware*, being the General School Law of the state. On the filing of the bill a rule was issued to show cause why a preliminary injunction should not issue. The defendants moved to discharge the rule and at the same time demurred to the bill. The cause was heard on the motion and demurrer, both of which raised the same questions of law. The material facts are set forth in the opinion of the Chancellor.

*Thomas F. Bayard* and *Percy Warren Green,* for the complainant.

*Robert H. Richards,* for the defendants.

THE CHANCELLOR. That portion of *Section* 54, *Chapter* 160, *Volume* 32, *Laws of Delaware,* under which the tax in question is sought to be sustained, is as follows:

"*Section* 54. Any school district, any special school district, or the public schools in the City of Wilmington, may, in addition to the amounts apportioned to it by the State Board of Education, levy and collect additional taxes for school purposes upon the assessed value of real estate and personal property in such district, as determined and fixed for county taxation purposes.

"Before such tax is levied, a special election shall be held at the usual place or places for holding school elections in the school district. Notice shall be given for such election by notices posted on the door of the school house where such election is to be held, at least ten days before the day of holding such election and by such advertisement in newspapers of the district or county as, in the judgment of the board of the district, will give notice to the voters of such election. In such notice, the amount to be raised and the purposes of raising the same shall be stated. At such election every person qualified to vote at the school election in the district shall be qualified to vote."

An election to decide whether an additional tax for school purposes should be assessed upon the real estate and personal property in Claymont Special School District, Brandywine Hundred, was duly held under the provisions of said *Section* 54. The election officers certified that at said election a total of one hundred and ninety-eight votes was cast, that one hundred and eleven votes were cast in favor of the tax, that eighty-seven votes were cast against the tax, and that there was a majority of twenty-four votes for the tax. It is charged that seventy-eight of the votes so received were cast by persons who were not qualified voters

of the district; that deducting these alleged illegal votes from the poll, there remained one hundred and twenty legal votes; and that of these upwards of sixty-three votes were cast against the tax. Wherefore, it is alleged, the lawful majority was against the tax instead of in favor of it. The bill, therefore, prays that the collection of the tax may be permanently enjoined.

The complainant alleges that he is a resident of the district, and a qualified and registered voter therein. The tax assessed against him is in the amount of $240.52, at the rate of twenty-eight cents per hundred on an assessed valuation of $85,900. The bill nowhere discloses whether complainant's property against which the tax was assessed was real estate or personal property.

The theory of the complainant's case is that persons who were qualified to vote within the meaning of said *Section* 54 of the School Law were only those persons who not only possessed the qualifications as to age, residence, etc., prescribed in *Article V* of the Constitution of the state, but who in addition had been duly registered as voters as provided by said *Article V* of the Constitution.

The seventy-eight alleged illegal votes were cast by people who were not "registered voters." If registration is not a qualification of a voter within the meaning of the act, then, as the case is presented, the seventy-eight voters were qualified to vote, for no disqualification is alleged against them other than that they were not registered.

By their motion to discharge the rule, and by their demurrer, the defendants rely upon two propositions of law, viz.: (1) That the court is without jurisdiction. (2) That registration was neither a prerequisite nor a qualification for voting at the special school election referred to in the bill of complaint.

I shall dispose of these contentions in the inverse order of their statement, though the logical course to follow would be to dispose of the jurisdictional question first.

Must a voter, in order to be qualified under the provisions of the section above quoted, be a registered voter?

Answer to this question depends on the construction to be given to the last sentence in the quoted portion of the section, which is as follows:

"At such election every person qualified to vote at the school election in the district shall be qualified to vote."

This sentence refers us to other provisions of the act providing for the general school election, for the purpose of ascertaining the qualifications of voters at the special tax election. *Section* 19 of the act contains the other provisions which deal with the general school election, and that section provides in the first paragraph thereof, as follows:

"*Section* 19. The general administration and supervision of the free public schools and educational interests of each special school district shall be vested in a board of education. They shall be elected from the residents of the given special school district by all qualified voters thereof, for terms of three years beginning with the first day of July next succeeding their election, and shall hold office until their respective successors qualify."

The fourth paragraph of *Section* 19 further provides:

" * * * If any person, not duly qualified to vote, shall offer to vote at a special school district election, such person shall be guilty of a misdemeanor. * * * "

It therefore appears that the section dealing with school elections to which *Section* 54 refers us, for the ascertainment of what shall constitute the qualifications of voters at the elections to be held for passing on the question of additional taxes, sheds no light on the situation, for it brings us back to the place from which we started, namely, to the phrase "qualified voters," or its equivalent. This phrase, therefore, is undefined by the act employing it, and its meaning must be ascertained by interpretation.

Solicitors for both the complainant and defendants agree that the phrase "qualified voters," in the absence of a definition thereof in the statute employing it, is to gather its meaning from *Article V* of the Constitution of the state, which deals with the subject of elections and the qualifications of voters. In this I think they are correct, for, if recourse is not to be had to that instrument, I am at a complete loss to know where else to turn for a definition of the expression. It might be said that the history of school legislation in this state and the provisions of law governing school elections prior to the enactment of *Chapter* 160, *Volume* 32, *Laws of Delaware*, may legitimately be consulted for the purpose of ascertaining whether or not there has been a sufficiently constant

and consistent definition of the qualifications of voters at school elections to justify the court in concluding that the phrase "qualified voters" (appearing in said *Chapter* 160) has come to have a fixed and definite meaning in the legislative terminology of this state. Whether such a process may be adopted for ascertaining the meaning of the phrase, I need not determine. But, if it were followed, one negative fact would stand out very clearly, viz., that ever since we have had a constitutional provision, providing for the registration of voters, the provisions of the school law regulating school elections down to the enactment of the recent act of 1921 (*Chapter* 160, *Volume* 32) has never specified registration as one of the qualifications of a voter at school elections. This is manifest, not only from the language of the various acts specifying the qualifications of male voters, but is more strikingly evident from the fact that female persons who have paid school taxes have been allowed to vote, a class of persons for whose registration no provision had ever been made prior to the adoption of the Suffrage Amendment to the federal Constitution. (*Constitution of the United States, Amendment,* 19.) A legislative permission allowing them to vote at school elections is, therefore, entirely inconsistent with the idea that registration has been heretofore regarded by the statute as a qualification for voting at school elections.

But I do not rest my conclusions in this case upon this line of reasoning, which would perhaps not be sound except in a case where the court is driven by extreme perplexity to adopt such reasoning, or, as an alternative, to abandon all attempt to construe the legislative intent.

I shall take the view of the solicitors in the cause, namely, that the Constitution is the source from which the phrase "qualified voters" is to derive its meaning. Before referring to the provisions of the Constitution of this state which deal with the subjects of qualifications of voters and their registration, it is pertinent first to notice the common sense distinction between the two concepts of registration and qualification of a voter. The distinction has been noted and expressed in that class of cases where the constitution of a state has undertaken to define the qualifications of voters, without providing for their registration, and the legis-

lature of such state has later enacted a general registration law, and the contention has then arisen that the legislature in the enactment of such registration law has thereby assumed to add to the qualifications of the voters and thus attempted an unconstitutional exercise of authority. In cases of this sort courts have been led to consider the fundamental difference between qualification and registration of a voter and have held that the latter is in no sense embraced within the former. The following cases, cited on the brief of the complainant, are of this kind: *Cusick's Election*, 136 *Pa.* 459, 20 *Atl.* 574, 10 *L. R. A.* 228; *People ex rel. v. Hoffman, et al.*, 116 *Ill.* 587, 5 *N. E.* 596, 8 *N. E.* 788, 56 *Am. Rep.* 793; *Capen v. Foster*, 12 *Pick. (Mass.)* 485, 23 *Am. Dec.* 632; *In re McDonough*, 105 *Pa.* 488. When we speak of the qualifications of a voter, we mean to refer to those things which must exist as going to make of him a voter, as conferring on him the absolute right to be placed among the class of persons which the law creates and calls voters. Registration, however, means an entirely different thing. It rather refers to the idea of evidencing the existence of the things which constitute a voter, a recording of the fact that the individual in question possesses the designated qualifications of a voter. Of course, if the Constitution in its definition of a qualified voter specifically designates registration as one of the qualifications, then by arbitrary definition registration becomes a qualification. This appears to be the case in South Carolina, where under *paragraph* 4, *Article* 2, of the Constitution of that state registration and a certificate thereof are specifically enumerated as among the qualifications. The case of *McLaurin v. Tatum*, Supreme Court of South Carolina, 85 *S. C.* 444, 67 *S. E.* 560, cited by complainant as nearest in point to the pending case, is, therefore, not in conflict with the views as to the natural meaning of the terms just expressed.

When adjudicated cases are consulted for definitions of the phrases "qualified voters" and "registered voters," attentive regard must be paid to the constitution and laws of the particular jurisdiction in which each case arises, lest some peculiarity of language in one jurisdiction, not found in another, will escape attention, and, by reason of its effect, give to the cited case an erroneous application. The language of our own Constitution is

so clear and unmistakable in its meaning that I do not deem it worth while, as an aid in ascertaining it, to undertake a review and analysis of cases cited from other jurisdictions, where the two phrases have been defined under the constitutional and statutory provisions found in those jurisdictions.

*Section* 1, *Article V*, of the Constitution of this state prescribes the time when "the general election" shall be held. *Section* 2 of the same article provides as follows:

"*Section* 2. Every male citizen of this state of the age of twenty-one years who shall have been a resident thereof one year next preceding an election, and for the last three months a resident of the county, and for the last thirty days a resident of the hundred or election district in which he may offer to vote, and in which he shall have been duly registered as hereinafter provided for, shall be entitled to vote at such election in the hundred or election district of which he shall at the time be a resident, and in which he shall be reggistered, for all officers that now are or hereafter may be elected by the people and upon all questions which may be submitted to the vote of the people. * * * "

The section makes no mention of the terms "qualified voters" or "qualified to vote." The expression is "shall be entitled to vote." Thus far it would appear that no one is "entitled" to vote unless he be first registered. The elections to which the section is made applicable are where officers are to be elected by the people and where any question is to be submitted to the people. Whether the elections referred to are to be in any wise restricted to elections specifically contemplated by the Constitution, I shall not pause to consider. In passing, however, it may be observed that, if the elections referred to are not restricted in character, in other words, if they embrace all sorts of elections held in the state, including school elections, then it is very doubtful if there have been many school elections constitutionally held in this state during the last quarter of a century, by reason of the fact that the law governing school elections has allowed a class of voters to vote thereat who have not until recently possessed the constitutional qualifications to vote, viz., women who pay school taxes.

But I hinge nothing on this suggestion, for the Constitution in a later provision contains language that convincingly demonstrates that, notwithstanding the general language of *Section* 2,

it was never intended that registration should be among the qualifications of a voter.  *Section 4 of Article V* is as follows:

"*Section 4.* The General Assembly shall provide by law for a uniform biennial registration of the names of all voters in this state who *possess the qualifications* prescribed in this article, which registration shall be conclusive evidence to the election officers of *the right* of every person so registered to *vote* at the general election next thereafter, who is not *disqualified* under the provisions of *Section 3* of this article; but no person shall vote at such election unless his name appears in the list of registered voters.   *   *   *   "

The *Section 3* referred to provides a disqualification for bribery.  The words italicized indicate a clear distinction in the Constitution between being a "qualified voter" and a "registered voter."  Qualifications are recognized as existing as distinct from a right to vote; that is to say, a voter must possess certain qualifications, the possession of which entitles him to be a voter; but the existence of these qualifications must be evidenced by registration before he is permitted to exercise his right as a voter.

If it be, however, that the view just expressed is not justified by that portion of the Constitution thus far considered, a further provision, appearing as the last sentence in the fourth paragraph of *Article V* makes it indisputably clear that, if registration is a consitutional qualification of the voter, it can only be so with respect to general elections.  That sentence is a follows:

"Registration shall be required *only* for general biennial elections at which representatives to the General Assembly shall be chosen, unless the General Assembly shall otherwise provide by law."

Whatever, therefore, might be said with respect to the intent to make registration a qualification of a voter at the general elections held in this state, this clause unmistakably indicates that the Constitution does not intend to make registration a qualification of the voter at other elections.  It leaves it for the Legislature to determine when and at what other elections voters shall be required to register before being allowed to vote.  The tax election held in Claymont Special School District was, of course, not a general biennial election, and the only question to be further considered is, therefore, whether the Legislature has seen fit to "otherwise provide by law"  for the registration of voters at that election.

*Chapter* 160, *Volume* 32, *Laws of Delaware*, under which the election was held, does not provide for a registration of voters. If there is any provision by legislative enactment requiring such registration at school elections, it must, therefore, be found elsewhere. Solicitors for the complainant contend that registration at such elections has been provided for by the Legislature in *Chapter* 36, *Volume* 21, *Laws of Delaware*, approved May 27, 1898, and the various amendments thereto. This act, known as the general registration law of the state, is entitled "An act providing for a uniform system of registration of all qualified voters in this State." Its first section is as follows:

"*Section* 1. That for the purpose of preventing fraud at all elections held on the Tuesday next after the first Monday in the month of November, as provided by *Section* 1 of *Article* V of the amended Constitution, and facilitating the ascertainment of those who are duly qualified electors according to the said amended Constitution and laws of this State, there shall be hereafter a general registration of all the qualified voters resident in each election district of this State."

I understand the complainant to insist that this act, with its purpose as declared in *Section* 1, is *inter alia*, tantamount to a legislative declaration, made in harmony with the last sentence of the fourth paragraph of *Section* 4, *Article* V (*quoted supra*), that as a prerequisite to the exercise of the right to vote at elections, other than general biennial elections (including thereby school elections), voters must be registered as provided in said *Chapter* 36, *Volume* 21, *Laws of Delaware*.

If this act bears the meaning thus sought to be attributed to it, then ever since its enactment nearly a quarter of a century ago its scope and effect have been entirely misunderstood, for never before has it been regarded as applicable to elections generally. School elections have never been conducted with any regard to it. Indeed, that the Legislature of the state never regarded the act as applicable to school elections is manifest from the fact that for many years women were admitted to the suffrage at school elections. If voters at school elections were required by the act in question to be registered, as is now contended, the curious fact stands out, viz., that the act does not permit the registration of women under any circumstances. This circumstance clearly

shows that the Legislature has never regarded the general registration law as applicable to school elections.

Furthermore, as showing the legislative view that the general registration law is not applicable to elections generally, it is to be noted that on the various occasions when the question of the licensing of the manufacture and sale of intoxicating liquors has been submitted to the people under the local option provisions of our Constitution, in each instance the Legislature has specifically provided for a registration of the voters preliminary to the election. The law also provides for a special registration for special elections to fill vacancies in certain offices. If the general registration law were applicable to all elections, it might be said that there was no reason why the Legislature should have provided for special registrations in the instances just referred to.

But it may be said that nothing can be deduced from this, except that for particular reasons of policy the Legislature saw fit in the instances named not to rely on the general act, but to require a special registration.

However this may be, the general act itself contains evidence within itself that it was never intended to apply generally to all sorts of elections. If it does so apply, it can only be by implication. But all the implications are to the contrary. In the first place, there is no express provision extending it to elections generally. Referring especially to school elections, there is no machinery for placing the registration books in the hands of officers who hold school elections. Registration is arranged for and recorded in books by election districts, and such districts do not have their boundaries coterminous with school districts. Some of the school districts of the state in fact spread over portions of more than one election district. This situation would leave the question of a voter's right to vote at a school election *in pais*, subject to proof in each instance outside of the registration book, a circumstance not consonant with the general theory of the registration law. Is it reasonable, therefore, to suppose that the registration act was meant to apply to school elections? I shall not lengthen this opinion with an analysis of the general registration act for the purpose of showing why by its own terms it cannot be said that it is impliedly applicable to school elections in this state. A careful reading of

its provisions indicates clearly that it was never intended to apply to such elections.

I hold that a "qualified voter," within the meaning of the school law (*Chapter* 160, *Volume* 32, *Laws of Delaware*), does not mean a "registered voter" under the Constitution and laws of this state.

The seventy-eight voters who are said not to have been qualified to vote at the school election at Claymont, having no disqualification other than the alleged one of not being registered, were entitled, therefore, to have their votes counted. This being so, the motion to discharge the rule should be granted, and the demurrer to the bill should be sustained.

It was also urged that the court is without jurisdiction. As was said at the outset, this objection should logically be disposed of first; for, if sustained, the other objection need not be considered. Notwithstanding I think the objection to the jurisdiction is well taken, I nevertheless, in view of the immediate importance of the main question, deemed it best to state my views with respect thereto. The more was I inclined to pursue this course because, if the complainant should desire to appeal to the Supreme Court, he can, in case the Supreme Court should sustain the jurisdiction, then secure a final decision on the main question.

It is well to again mention the fact that the tax complained against is not alleged to have been assessed against real estate; nor is it alleged to have been assessed against personal property. The bill and its exhibits fail to disclose the nature of the property assessed. Solicitors for the complainant, however, argue the case on the theory that the pleadings present a case of tax assessed on real property. Though this assumption is erroneous, yet I shall accept it as true, for I assume that the facts would warrant an application to amend by alleging the tax to have been assessed against such property. Nothing, therefore, would be gained by basing my decision on the assumption that the tax might, for all that the bill shows, have been assessed against personal property. The court of last resort in this state in the case of *Murphy v. City of Wilmington*, 6 *Houst.* 108, 22 *Am. St. Rep.* 345, and this court, in cases of *P., W. & B. R. Co. v. Neary*, 5 *Del. Ch.* 600, 8 *Atl.* 363,

*Equitable, etc., Co. v. Donahoe*, 8 *Del. Ch.* 422, 45 *Atl.* 583, and *Catts v. Town of Smyrna*, 10 *Del. Ch.* 263, 91 *Atl.* 297, have had occasion to consider aspects of the question of when and under what circumstances equity has jurisdiction to restrain the collection of taxes, or dues, assessed by authority of law, at the suit of the taxpayer. Those cases contain within their rulings principles sufficiently applicable to govern this case. Those of them that denied to the complainant the equitable relief sought proceeded on the familiar principle that where there is an adequate and sufficient remedy at law equity will not intervene. The mere fact that a tax is illegal and void is not in itself enough to invoke the aid of the extraordinary powers of equity for its suppression. The case must "come under some one of the recognized heads of equity jurisdiction," as was said by the Court of Errors and Appeals in *Murphy v. City of Wilmington, supra*. If by reason of the tax and its threatened collection a cloud is cast upon the title to real estate, or irreparable injury, or a multiplicity of suits is threatened, or, as is indicated in the case just cited, possibly if the complainant's title is purely an equitable one and not cognizable in a court of law, then cases are presented over which equity, following the beaten path of its precedents, may take jurisdiction. But unless there be some circumstance in the case bringing it within the domain of recognized equity jurisdiction, the extraordinary powers of the court will not be released to the interruption of the public revenues and the consequent confusion of public business.

In *P., W. & B. R. Co. v. Neary, supra,* which was a bill to restrain the collection of a tax, the Chancellor, after expressing views in harmony with the foregoing, retained jurisdiction because of the stipulation filed in the cause bringing the case within that class of cases where the prevention of a multiplicity of suits is the ground of jurisdiction.

In *Equitable, etc., Co. v. Donahoe, supra*, which was a case seeking to restrain the collection of a personal tax, the Chancellor, after holding that the case was not sustainable as one to prevent a multiplicity of suits, dismissed the bill.

In *Murphy v. City of Wilmington, supra*, which was a case of an alleged illegal assessment laid upon real estate for the construction of a public sewer, the Court of Errors and Appeals sustained the

decree of the Chancellor dismissing the bill. Though it was urged that the assessment constituted a cloud on the title, yet the court held that, if the assessment were illegal as contended, it was an illegality appearing on the face of the proceedings, and not dehors the record, and being such equity had no jurisdiction to restrain the collection of the assessment. The complainants were remitted to law for their remedy.

In *Catts v. Town of Smyrna, supra,* the Chancellor, following the last-cited case, retained jurisdiction because in that case the allegation of illegality in the assessment against the real estate of complainant for side-walk improvements was not apparent on the record of the proceedings, but if it existed, lay outside the record in parol.

The only ground upon which it is contended the court may retain jurisdiction in the pending case is that the tax in question is a lien on real estate and being illegal constitutes a cloud on the complainant's title. Assuming the tax to be illegal (the correctness of which assumption I have in the first portion of this opinion rejected), the question then is: Is it a lien on real estate? If it is, then in view of the decision in *Murphy v. City of Wilmington, supra,* and *Catts v. Town of Smyrna, supra,* the court would have jurisdiction, because the alleged illegality of the tax is not apparent anywhere in the proceedings authorizing it.

Is, then, the tax levied under *Section* 54 of the school law a lien on real estate? It is well settled that taxes do not constitute a lien on the assessed property unless expressly made so by statute. *In re Lord, etc., Chemical Co.,* 7 *Del. Ch.* 248, 44 *Atl.* 775; *Morrow v. Daws,* 28 *N. J. Eq.* 459; *Linn v. O'Neil,* 55 *N. J. Law,* 58, 25 *Atl.* 273; *Quimby v. Wood,* 19 *R. I.* 571, 35 *Atl.* 149; *Tompkins v. Little Rock, etc., Co., (C. C.)* 18 *Fed.* 344; 2 *Cooley on Taxation,* (*3d Ed.*) 865, citing cases.

Nowhere in any of the provisions of the school law is it provided that the taxes provided for by *Section* 54 shall constitute a lien on the property assessed. Under the authorities just cited, the tax in question is not a lien on complainant's real estate.

This is so unless there is force in the argument of the solicitors for the complainant that by clear implication derived from other provisions of the school law, the tax in question is made a lien

Before stating the reasons advanced in support of this argument, it should be said that liens for taxes are not to be erected by presumptions. If the Legislature means a tax to be a lien, it can very easily say so. It has frequently said so with respect to other taxes. If the doctrine that the existence of liens for taxes may be gathered from inference and implication is to be accepted, then titles to property are in danger of being enveloped in doubt. Those who contemplate purchasing real estate would negotiate in fear and take title with apprehension, for where liens may arise by construction and inference, there could not be that degree of assurance which is essential in dealings among men respecting the sale and transfer of real property. I do not say that in no case can there be a lien created by necessary implication. There may be. But, if so, it must be a case where the implication is so plain as to be tantamount to positive language. Certainly the presumption should be against the lien where it is sought to establish it by inference.

Now, in the case before me, the complainant argues that the tax in question is made a lien by necessary inference. I cannot agree with the contention. It is said that the act in *Section* 54 provides that:

"In collecting the said tax, he [the collector] shall proceed in the manner and have all the powers of the collector of county taxes."

County taxes are specifically made a lien on real estate for two years, and the collectors may proceed against the real estate. Hence it is argued the school tax collector may likewise enforce a lien against the assessed real estate. If not, it is said, how can he proceed in the manner and have all the powers of the county tax collector? The county tax collector may sue the taxable, seek to make the judgment obtained out of personal property or real estate generally held by the taxable, and in some cases attach the body of the taxable. He may also enforce the lien by proceeding to sell the assessed land after complying with the provsions specially regulating this procedure. This being so, the clause of the school law authorizing the collector of school tax to proceed in the manner and have the powers of a county tax collector means this: That he is to employ such remedies as are adequate to the school tax

situation. If the school tax were declared by the statute to be a lien on the assessed property as is the case with the county tax, then the school tax collector would by reason of the clause referred to have the power similar to that of a county tax collector to enforce the lien. But there being no such statutory lien for a school tax, this particular power of a county tax collector has nothing under the school law upon which to operate.

I need not discuss this point further. It is very clear to me that the argument advanced cannot serve to attach to the school tax assessed the feature of a lien.

There being no lien created by the law upon the lands of the complainant for the tax in question, there can be no question of a cloud on his title.

On both grounds urged by the defendants, the motion to discharge the rule should be granted, and the demurrer should be sustained.

Let an order be prepared accordingly.