SAMUEL CATTS CHARLES KATZ, ANNA CUNINGHAM and ALAN CUNINGHAM,

*vs.*

THE TOWN OF SMYRNA, a municipal corporation of the State of Delaware, SAMUEL J. REYNOLDS, President of the Town Council of said Town, HARRY P. GRIEVES, JOHN P. HUDSON, JOSEPH H. WRIGHT, JAMES H. ROBERTS, JAMES N. LLOYD and SAMUEL A. FORTNER, Councilmen, constituting the Town Council of the Town of Smyrn, and a EUGENE CROW, Alderman of said Town.

*Kent, April* 13, 1914.

The owner of personalty seized for the collection of an illegal municipal tax is not entitled to enjoin the sale of the property, having an adequate remedy at law, either by paying under protest the amount demanded and suing to recover it back, or by an action of trespass for damages.

Where an illegal municipal tax is assessed upon real property, the owner is not entitled to enjoin the collection of the tax, or to equitable relief to remove it as a cloud upon his title, unless the tax appears regular and valid on its face.

Where an assessment for paving levied upon the land of the abutting owner was irregular, because the pavement was not laid as authorized by statute, but that fact did not appear from the record, the abutting owner is entitled to equitable relief to remove the lien as a cloud from his title, and to enjoin the sale of his property.

The general charter of the town of Smyrna (20 *Del. Laws, c.* 537), provides a general system for improvement of streets. 25 *Del. Laws, c.* 186, authorized the town to issue bonds for the purpose of paving certain streets and to assess part of the improvement against the abutting owners. This act did not authorize the construction of sidewalks and limited the improvements to such as could be constructed with the funds borrowed. *Held*, that it did not repeal the charter provisions, nor was it an amendment to the charter; and hence ordinary street improvements, including the laying of sidewalks, are governed by the charter, and not by 25 *Del. Laws, c.* 186.

After the money authorized to be borrowed by the town of Smyrna under 25 *Del. Laws, c.* 186, to improve certain streets, has been expended, the town council is without power, under the provision of the act limiting the improvements to those possible with the money borrowed, to act further thereunder; and hence, even if the act be construed an amendment to the charter, it does not apply to improvements made after the expenditure of the borrowed funds.

Statutes requiring notice to abutting owners to make certain improvements, being for the protection of such owners, are generally regarded as mandatory, and, if omitted, assessments for improvements, when made by the municipality, cannot be collected.

On motion for a decree notwithstanding answer, allegations in the answer are to be taken as true.

Where the charter of a municipality provided that abutting owners should be notified to make certain improvements, and, if they failed, they might be made at their expense, without notice, the notice need not be in writing.

While a notice should disclose on its face that it emanates from some

person, or body, or tribunal, and that it has power to act in the manner indicated by the order, a notice directing the owners of abutting property to cause certain paving and guttering to be done is sufficient, under the city charter, providing for thirty days' notice, though reciting that it was given by the board of commissioners, instead of the town council, and though signed by G. as secretary, when it should have been signed by the clerk of the council, because apprising the owners that it emanated from an official body which claimed authority to act.

The council of a municipality is the judge of the necessity of public improvements.

Where notice to landowners to cause certain paving to be done was given as required by statute, and the owner of property died before the municipality completed the work, the heirs of the owner cannot defeat the assessment on the ground that they were given no additional notice, for they inherit their rights to the property subject to such notice.

A landowner, who stands by and allows a municipality to lay pavement which he was required to provide, cannot, after the pavement has been constructed, defeat the assessment on the ground that the notice given him by the municipality was defective, having concealed the defect and allowed the municipality to proceed; but where the improvement was not laid as required by statute, and the defect was not apparent on inspection, the owner was not estopped to attack the assessment on that ground.

BILL TO RESTRAIN SALE OF PERSONAL PROPERTY. The complainants were the owners of unimproved real estate situate on the westerly side of Main Street, in the town of Smyrna, extending from a street in said town known as Hamilton's Lane to Lake Como, a lake or pond which constitutes the southern boundary of the town. Main Street is a continuation through the town of Smyrna of a road known as the "State Road," running the entire length of the State of Delaware, which, according to the allegations of the bill, under *Section 2, Chapter* 60, of the *Revised Code of* 1893, is required to be forty feet wide, and according to a plat recorded in the office of the Recorder of Deeds, in and for Kent county, made and recorded under the provisions of *Chapter* 280, *Volume* 11, *Laws of Delaware*, Main Street was laid out at a width of forty feet.

Under an Act of the Legislature, passed in 1911 (*Chapter* 186, *Volume* 25, *Laws of Delaware*), the town of Smyrna was

authorized to borrow money and issue bonds to secure the same, for the purpose of improving streets of the town to be selected by the town council, and to assess against the owners of the property abutting on the streets improved a portion of the expense of such improvement, the amount so assessed to become a lien against the property. The charter of the town, being *Chapter* 537, *Volume* 20, *Laws of Delaware*, also authorized the town council to direct the construction of curbs and gutters and the laying of pavements four feet wide, and provided a method of doing the work at the expense of the abutting property owners upon failure of the property owners to do the work after thirty days' notice to them, and for the collection of the cost thereof by the sale of their real and personal property.

It was alleged in the bill that in 1912 the town council of Smyrna, without notice to the complainants, entered upon the land above mentioned, the estimated value of which is $600, laid a pavement four feet three inches wide on the easterly side thereof, and constructed "a curb and gutter within the limits of the said roadway in front of the said lands," prior to which time there had never been a curb, gutter or pavement in front of said land; that by the construction of the curb and gutter the roadway has been narrowed to thirty-eight feet; that on May 8, 1913, a bill for $471.12, to cover the cost of the labor and material used in doing the work, was presented to Samuel Catts and Anna Cuningham, two of the complainants. In June, 1913, Eugene Crow, the alderman of the town of Smyrna, levied on certain goods and chattels of Samuel Catts and Anna Cuningham to pay the cost of said work, and advertised the same for sale. The bill also alleged that the pavement could be laid only under the provisions of the charter of the town (*Chapter* 537, *Volume* 20, *Laws of Delaware*), and the curb and gutter constructed only under authority of *Chapter* 186, *Volume* 25, *Laws of Delaware*, under the provisions of which latter Act the cost of the curb and gutter became a lien on the real estate and the personal property could not be levied on and sold to pay said cost. It is further alleged that the provisions of neither of these statutes have been complied with as to notice to the complainants to do the work and respecting subsequent

proceedings; that the work did not result in an improvement to the land, was unnecessary for the traveling public and was done for the purpose of beautifying the southern portion of the town.

In addition to prayers for subpoena, answer and other relief, the bill prays that the charges be set aside and declared null and void; for an injunction restraining the sale of the goods and chattels levied on; and for the production of the minutes, ordinances and records and proceedings of the town council concerning the matters complained of.

The answer averred that on June 23, 1911, the town council passed an ordinance directing this work to be done, and on June 26, 1911, notice thereof was served on Samuel Catts, Charles Katz and Sarah E. Cuningham; that Samuel Catts was a resident of Smyrna and had charge of, managed and controlled the land, and was several times requested to do the work by a member of the town council; and that Sarah E. Cuningham, who died after the service of the notice and prior to the filing of the bill of complaint in this cause, was the mother of Anna and Alan Cuningham, two of the defendants, through whom they claim an interest in the land. The notice specified the kind of material to be used and stated that unless the work was done by the owners of the land within one month the "commissioners of the town of Smyrna" would proceed to do it, and the owners of the land would be looked to for payment of the cost thereof. It was admitted that Main Street is a part of the "State Road," but the defendants were unable to say whether it is one of the roads described in *Section* 2, *Chapter* 60, *of the Revised Code*, to be forty feet wide. It was also admitted that the pavement was four feet three inches wide, but the answer averred that the complainants were charged only for a pavement four feet wide. It was also averred by the answer, that prior to the laying of the pavement and construction of the curb and gutter, a ditch existed in front of the complainants' premises, which made the space available for use by the public much less than thirty-eight feet. It was denied that the curb and gutter could be constructed only under the provisions of *Chapter* 186, *Volume* 25, *Laws of Delaware;* and it was averred

that it could be and was done under the provisions of the charter of the town, which were complied with in all respects, and, therefore, it was not necessary to comply with the requirements of *Chapter* 186, *Volume* 25, *Laws of Delaware.* The defendants, in their answer, claim that the work done has greatly improved and enhanced the value of the complainants' property.

The cause was heard on bill and answer, on a motion made under rule 29A for a decree notwithstanding the answer.

*Charles H. LeFevre* and *William M. Hope*, for the complainants.

*James H. Hughes*, for the defendants.

The Chancellor. The objects of the bill being to enjoin a sale of personal property advertised for sale by a municipality in collecting an assessment for the cost of laying pavement, curb and gutters in front of land of the complainants, and in addition to effect a cancellation of the assessment, it becomes necessary to inquire first as to the jurisdiction of the court to hear and determine the matter. This question was raised by the defendants at the argument, and it was claimed that as the complainants sought to enjoin the sale of personal property the court had no jurisdiction. The law on this subject is settled in this State by the Court of Errors and Appeals in *Murphy, et al., v. Wilmington*, 6 *Houst.* 108 (1880), 22 *Am. St. Rep.* 345. Some of the principles there stated were evidently overlooked by the same court in the case of *Fulton v. Dover*, 8 *Houst.* 78 (1888), 6 *Atl.* 633, 12 *Atl.* 394, 31 *Atl.* 974, but *Murphy v. Wilmington* was not there cited or considered, so far as the report of the case shows, either in the Court of Chancery or in the appellate court, and there is nothing in the later case overruling the earlier one. The cases of *Curry v. Jones, et al., 4 Del. Ch.* 559, and *Sharpe. v. Tatnall*, 5 *Del. Ch.* 302, if they be in conflict with *Murphy v. Wilmington*, are not authoritative.

The law as stated in *Murphy, et al., v. Wilmington* is binding on this court, and furthermore is based on sound reason and the decisions of other courts elsewhere. In that case the bill was filed to enjoin the collection of an assessment made on

real estate of the complainant for a part of the cost of building a sewer, it being alleged that the assessment was illegal. In sustaining the decree of the Chancellor dismissing the bill, the court held that a Court of Chancery should not interfere to prevent the collection of such assessments except under special circumstances, such as left the complainant without any remedy at law, or where it was clear that the tax had been imposed without authority and was absolutely void. Even in such cases it must come within some one of the recognized heads of equity jurisprudence, and there must be the clearest grounds therefor. On the general subject of tax sales, the court at page 138 used the following language:

"The owner of personal or real property, seized or sold under execution for the collection of an illegal municipal tax, has an adequate remedy at law, either by paying under protest the amount demanded, and bringing an action against the city to recover it back, or by an action of trespass for the recovery of damages. In the case of a sale of real property under a void assessment, as in the case of a sale by the sheriff on a void judgment, the purchaser buys at his peril, and the owner may fold his arms in defiance, or, if dispossessed, maintain his rights by an action of ejectment. Under such circumstances the owner can sustain no irreparable injury, and would suffer a loss only by his own passive submission to a wrong. A party claiming title under a corporation tax sale must show that every prerequisite to the power of sale has been complied with, and compliance with law must appear on the face of the proceedings."

The remedy by *certiorari* is also referred to as generally furnishing adequate relief in such cases. From this decision it is clear that if the sole relief sought by the complainants in the case now before this court had been to enjoin the sale of personal property, there would be at least a serious question as to the jurisdiction of this court to grant relief. But there is in this case a lien upon land of the complainants arising from the work done by the town of Smyrna on land of the complainants. Whichever of the two acts of the General Assembly hereinafter referred to applies to the municipal improvements in question, there is a lien on the land abutting the place improved. Both statutes make the cost of sidewalks, curbs and gutters liens on the abutting land. Therefore, if the assess-

ment be invalid the apparent lien constitutes a cloud on the title of the complainants to their land. But not every such cloud on title to land is remediable in equity. In the case of *Murphy v. Wilmington, supra,* the powers of the Chancellor are clearly defined in these words:

"A lien or incumbrance, to throw a shadow upon title to real property so as to give the owner a right to relief in equity, must be one that is regular and valid on its face, but is in fact irregular and void from circumstances which have to be proved by extrinsic evidence."

In the case cited the court found that all the points relied on to show invalidity of the assessment appeared from the statute and the journals and records of the city government, and did not call for any outside evidence for the purpose of testing the validity of the assessment there made, and so the Court of Chancery had no jurisdiction. In the case now before this court, however, it is urged that the assessment was invalid because the curb and gutter were laid about two feet further east than it should have been, and was laid partly within the confines of the highway as fixed by law at forty feet, whereby the highway is narrowed to about thirty-eight feet. So far as now appears this alleged error in locating the curb and gutter is not shown anywhere in the town records, and would not be shown in a *certiorari* proceeding. Therefore, as evidence outside the municipal records must be given to establish the error, the cloud on the title arising from the lien is such a one as a court of equity will grant relief, if the error is shown. Though not clearly shown by the allegations of the bill, still taken in connection with the answer it does appear that the court has jurisdiction to determine the validity of the assessment for the reason above stated.

In order to decide the several questions raised by the complainants, it is necessary first to determine which of two statutes applies. The general charter of the town of Smyrna was a re-incorporation in 1897 by *Chapter* 537, *Volume* 20, *Laws of Delaware.* By it a system of municipal government was provided, giving the town council the power to require pavements to be laid and curbs and gutters constructed by

abutting owners. In brief, it was provided that after the council determined on such improvements the owners of abutting land should be notified to do the work, and if they neglect to do so for thirty days, the council may proceed to have it done, and present to the owners a bill for the expense thereof. Any notice required by law to be given to the owners could be served on any one of several co-owners. If the bill be not paid, the personal property of the owners may be levied on and sold, and in default of such property, the real estate may be reached. The assessments are made a lien on real estate.

In 1909 an Act was passed (*Chapter* 186, *Volume* 25) authorizing the town council to improve the roadways of the town between the curb lines, which did not include laying sidewalks or the improvement of the portion of the street between the curb and the building line of the abutting owner. The Act provided that council might select certain streets to be so improved, and when the work was done were required to assess against the abutting owners on each side of the street the cost of improving three feet of the roadway outside the curb line. The sum payable by each owner is to be then listed and advertisement made by posting the list. After an opportunity for objections, the list is to be certified to the collector of town taxes for collection. Owners of land may elect to pay in installments. After thirty days' default the collector may levy on the land and sell it. The amount assessed against each parcel of land is made a lien thereon. The town is prohibited from spending, in addition to what is assessed against the owners, more than $25,000 in such improvements, and this sum must be raised by an issue of bonds by the town. All moneys collected from abutting owners and obtained by the bond issue were payable into a special fund, which could be used for no other purpose.

The complainants claim that the charter provisions of 1897 apply to the paving of the sidewalks of the streets, and that the Act of 1909 is the only one that now applies to curb and gutter construction, it being to that extent a permanent amendment to the charter. As a consequence of so holding there are two methods of municipal improvements. As to the

paving of the sidewalk, the claim is that the notice required by *Section* 12 of the charter was not given. As to the curbing and guttering it is claimed that the town had no power under the Act of 1909 (which was the only statute which applied) to levy on or sell the personal property of abutting owners, and that the procedure provided by the later Act for assessing and collecting the cost of curbing and guttering had not been adopted.

The complainants urged that there was another error in the assessment which invalidated it, viz., the location of the curb and gutter about two feet too far east. This objection applies whichever Act is held to be controlling.

The charter provisions, and not the Act of 1909, apply to the assessment in question, and its validity is to be determined by it. It is clear that the later statute was for a special temporary purpose, and was not intended to be an amendment to the charter. Evidently the purpose was to spend a certain sum to be obtained not by taxation, but by borrowing it on town bonds; and with the money so raised and with what could be collected from abutting owners, to repave and so improve the roadway of some of the streets of the town and for this purpose the abutting owners were made chargeable with a portion of the cost of such improvements, including the cost of three feet on each side of the curb line. When the sum so borrowed by the town was exhausted there could be no further improvements made under the Act, and thereafter the charter provisions applied. This is made clear by the fact that otherwise there would be two remedies for collecting from abutting owners the cost of improving streets. New sidewalks would be governed by one Act and the curb, gutter and roadway by another Act differing widely from the earlier one. The differences between the two Acts are such that the later one does not effect a permanent amendment to the charter. Besides, it appears affirmatively by allegations of the answer, which are taken to be true, that before the council determined to pave, curb and gutter the street in question in front of the complainants' land, the special purposes of the Act of 1909 had been fulfilled, and all the money borrowed under it had been spent. It is also an important fact, appearing from the answer,

that the street in front of the land in question was not selected by the council for improvement under the provisions of the Act of 1909. Therefore, even if that Act be a continuing statute and so an amendment to the charter, the particular assessment would not be governed by it, but by the general charter provisions.

The validity of the assessment is attacked in the bill by the want of a notice to the abutting owners, as required by the charter. Statutory requirements to abutting owners to make improvements already determined on are for the benefit and protection of such owners and are generally regarded as mandatory. So that if omitted the assessment cannot be collected from the abutters. 4 *Dillon on Municipal Corporations*, (5th *Ed.*) §1457 (other edition, §§803, 804).

It is objected by the complainants that the notice required by *Section* 12 *of the charter of* 1897 was not given to them. The allegations in the bill as to the want of such notice is met by the answer. The ordinance directing by name the owners of land situated on the west side of Main Street to lay pavement, curb and gutter along the west side of the street was passed June 23, 1911, and on June 26, 1911, "a notice was served on the then owners, Samuel Catts, Charles Katz and Sarah E. Cuningham directing them to cause the paving, curbing and guttering required by the ordinance to be done," and a copy of the notice so given was attached to the answer as an exhibit. This allegation is taken to be true in this method of hearing this cause, viz., on a motion for a decree notwithstanding answer. But it is urged that the form of the notice is defective, and, therefore, the notice was insufficient. By attaching to the answer the form of the notice probably the defendants gave the complainants an opportunity for the making of the objection. The complainants urge that the notice is insufficient because it appears from the notice that it was given by the "commissioners," or "board of commissioners" of Smyrna, instead of by the town council, and, further, that it was signed by "Harry B. Grieves, Secretary," when it should have been signed by the clerk of council.

The charter says that the owners shall be notified to make

the improvements, and does not require that the notice be in writing, or be served on the owners, nor does it state by whom the notice is to be given. It was treated in the argument as an unsigned notice. An unsigned notice in itself is probably insufficient. *In re Road Notices*, 5 *Harr.* 324. A notice should disclose on its face that it emanates from some person, or body, or tribunal, claiming to have the power to act in the manner indicated by the order, for this alone gives it force or authority. The following cases cited by the complainants sustain this most reasonable proposition: *Minard v. Douglas County*, 9 *Or.* 206; *Niles v. Ransford*, 1 *Mich.* 338, 51 *Am. Dec.* 95; *Bausman v. Kelley*, 38 *Minn.* 197, 36 *N. W.* 333, 8 *Am. St. Rep.* 661. A notice signed by a name, without giving the title of that person who officially gave it, may in itself be insufficient. *McVichie v. Town of Knight*, 82 *Wis.* 137, 51 *N. W.* 1094. But this notice was not unsigned. It was signed by the name of a person and his official title was stated. It does not clearly appear that his title was erroneously stated.

The form of a notice, unless it be prescribed by law, is not important, and will not be critically considered so long as it fairly and fully apprises the person to be notified of the subject-matter of the notice. It surely appears in the notice under consideration with sufficient clearness that the town council of Smyrna had acted and required the paving and other work to be done by the owners in such manner as to meet the approval of the council; and the mistake in calling the council the commissioners, or board of commissioners, and the statement of his official title to be that of secretary instead of clerk, were quite unimportant and immaterial. By the language of the notice served on the owners it appeared to have been given by an official body with authority in the premises, and the notice sufficiently apprised those to whom it was directed of the duty required of them. This notice is sufficient, without relying on the further allegation of the answer that one of the co-owners was frequently requested by officers of the town, or members of the council to comply with the ordinance.

It is, of course, not a valid objection that the improvement was not needed. Of this the town council was the sole judge,

and the decision of that body is not reviewable by this court.

It was further urged by the complainants at the argument that, after June 26, 1911, when the notice in question was served, and before the work of paving, etc., was done by the council, Sarah E. Cuningham, one of the three co-owners of the land, had died and the title to her share had descended to her heirs at law, her two children, both of whom are complainants and also that during the same interval, as appears from the charter, there had been an election in the town of Smyrna. In the brief of the complainants' solicitor it is stated that Sarah E. Cuningham died in October, 1911, and that the paving, etc., was done in August, 1912. From these assumed facts it is contended that the change of ownership, the change in the membership of the town council and the unreasonableness of the delay in making the improvements each rendered the assessment invalid. But it does not appear in the record when the work was in fact done. By the account rendered to the owners dated May 8, 1913, (complainants' Exhibit A) it is only stated that the work was done in the year 1911 and 1912, and the defendants' answer says that Sarah E. Cuningham died in the fall of 1911. Therefore there does not appear of record any evidence to show unreasonable delay, even if that be a valid ground of objection; nor does it appear that there was any change in the membership of the town council as a result of an election, if in fact one was held in the interval above mentioned so that this is not debatable as an objection, and no opinion is expressed as to the sufficiency of such objection.

It does appear as a fact, however, that in the interval after the passage of the ordinance ordering Sarah E. Cuningham and the other two tenants in common to do certain work in a certain manner in front of this land, and after the giving to them of a notice to do the work, and before all of the work was done, Sarah E. Cuningham died and her share descended to two of the four complainants. Does this change of title so occurring render invalid the whole assessment? Clearly not. The work may have been begun in the lifetime of Sarah E. Cuningham. Even if the work had been begun and done after her

death, it is not claimed that her death and the descent of the land to her heirs at law made it necessary for the town council to begin a new proceeding, and no authority is shown for such a proposition. If a valid notice, be given to a landowner to make a certain improvement, such as paving in front of his land, within a fixed time, the one succeeding to the title of the land by death or otherwise is bound by the notice and by the proceeding already begun, and a new notice to such new owner, or new proceeding, is not necessary. 1 *Elliott on Roads and Streets*, §343; *Taylor v. County Com'rs.*, 18 *Pick.* (*Mass.*) 309.

Even taking the facts to be as stated by the complainants' solicitor, viz., that after the three tenants in common owning the land in question had been notified in a legal manner to make certain street improvements in front of their land, and before the work was done by the town fourteen months later, one of the tenants in common died, and her share in the land descended to her heirs at law, who are complainants in this cause, still under the other facts in the case the changes of ownership and delay would not invalidate the assessment. As herein above indicated, the heirs of the deceased tenant in common, who at her death was in default in not complying within thirty days with a valid notice to make the improvement, took title subject to any burden or duty imposed upon their ancestor by the proceedings taken by the town. The delay in making the improvements was the fault of the abutting owners and not of the town. Nothing was done by the town to waive any right, or to relieve the owners from any duty; but on the contrary the owners were on several occasions urged by officers of the town to make the improvements. Neither the death of one of the owners of the land, or the lapse of time, invalidated an otherwise valid assessment.

The point chiefly relied on to show irregularity in the assessment is that the curb and gutter were constructed in the wrong place, in that they were placed more than six feet east of the north side of the street, and, therefore, encroach on part of the highway by extending about two feet east of what should be the true line of the curb. It is claimed, that being an illegal encroachment on the highway, it is an unlawful structure and

the town cannot collect from the abutting owner the cost of constructing it.   It should be noted that this objection does not apply to the sidewalk, which is admittedly properly located, and, as already herein indicated, the town had a right to collect from the complainants the cost of laying the sidewalk, or pavement.

To determine whether the assessment for the curb and gutter is valid, it must be found from the admissions or allegations of the answer that the facts are as claimed by the solicitors for the complainants in their argument.   The allegation of the bill respecting the error of location is categorically denied by the answer, and without the evidence of the plot attached to the answer, and other statements in the answer, there would be no evidence of such erroneous location.   Attached to the answer is a plot made since the proceeding began, and for the purpose of this suit, by a surveyor.   From it it does clearly appear that the highway called Main Street, in front of the complainants' land, is since the laying of the curb in question thirty-eight feet wide and not forty feet wide.   If, as contended by the complainants, the legal width of Main Street be forty feet between curbs and the curb on the east side of the street is in its proper location, then the new curb on the west side of the street must be in a wrong place.   But the allegations of the complainants and defendants on this subject of the exact location of Main Street and its boundaries are conflicting and irreconcilable.   Nor does it appear from the plot of the defendants whether the error in the location is on the east or west side of the street.   It is alleged by the defendants, and taken to be true, that the curb in front of the complainants' land is a continuance of the same course of the long existing curb to the west of that land.   That tends to show that the curb in question was rightly located.   Inasmuch, then, as the facts as established in the case do not clearly show that the curb in front of the complainants' land was located in the wrong place, that is, about two feet too far to the east, it is not at this time right to express any opinion as to the effect of such error in location, if such should hereafter be shown to exist.

The defendants urge as a complete defense to the claim of

the. complainants to relief, the doctrine of estoppel arising from failure to object pending the making of the improvement. This is .equitable estoppel based on silence and acquiescence when there is both an opportunity and duty to speak. To make it effective the party maintaining silence must know or be in a situation to know that some one was relying on such silence or acquiescence, and acting, or about to act, as he would not have done had the other spoken and asserted his right. There is ample authority for the proposition that silence and acquiescence on the part of a property owner, who stands by and permits an improvement to be made in front of his land knowing its progress, knowing that it is intended to pay for the improvement by a special assessment on his property, and knowing also the defects in the proceedings, will estop him from attacking the validity of the assessment by a suit to restrain the collection of the cost of the same, or to vacate or cancel it, on the ground of any defect or irregularity which does not affect the jurisdiction or power of the municipality. 4 *Dillon on Municipal Corporations*, (*5th Ed.*) §1455. The learned author supports the above proposition by many citations. He refers especially to the case of *Tone v. Columbus*, 39 *Ohio St.* 281, 303, 48 *Am. Rep.*. 438, as a leading case and as laying down the limitations of the rule. The circumstances under which it is the duty of the owner to speak are thus stated in the case just cited:

"When the improvement is of a public street upon which the owner's property abuts, before the duty to speak can be said to exist, which is so imperative that if he keeps silent then, he shall not afterwards be heard, it must be shown,

"First. That he knew the improvement was being made. * * *

"Second. That he had knowledge that the public authorities intended, and were making the improvement upon the faith, that the cost thereof was to be paid by the abutting property owners, and that an assessment for that purpose was contemplated. * * * Because cities may improve the streets out of the general fund and without a special assessment.

"Third. That he knew of the infirmity or defect in the proceedings, under which the improvement was being made, which would render such assessment invalid and which he is to be estopped from asserting. * * *

"Fourth. Some special benefit must have accrued to the owner's property, distinct from the benefits enjoyed by the citizens generally."

Opinion.

The principle of estoppel is not denied by the complainants, who urge however that it does not apply here.   But it would seem that the owners knew the improvements were being made, that the cost was to be assessed against their land, and that the defect of insufficient notice existed, and there was a special benefit to their property.   The knowledge of Samuel Catts was the knowledge of the co-owners, and he knew they were expected to pay for the improvements and not the town from its general fund.   The allegations of the answer establish these facts. But it does not appear that the owners knew, or could be reasonably expected to know, of the defective location of the curb or gutter, for it is not reasonably obvious without the exercise of more attention and care than was chargeable to the owners. So far as the pavement is concerned, the owners would be estopped to say that the assessment was invalid for want of notice, but they can notwithstanding object to the assessment so far as relates to the cost of the curb and gutter.

The case is now heard under a rule of court which allows a complainant to move for a decree notwithstanding an answer, the practical effect of which is to test the sufficiency of the answer as a defense in point of law.   But in his discretion the Chancellor may decline to decide the questions raised by the motion and direct the case to proceed.   This course will be pursued as to the lien for the cost of the curb and gutter.   But inasmuch as the defendant had a right to sell so much of the personal property levied on as was necessary to pay the cost of laying the pavement, the preliminary injunction heretofore awarded the complainants should not be continued pending the final hearing, unless the complainants pay to the defendant the cost of the pavement, or else the preliminary injunction be amended so as to apply only to a sale of property to collect the cost of the curb and gutter.

If desired, the parties will be heard as to the form of the order to be entered in accordance with this opinion.

NOTE.   Upon full hearing the matters of fact upon which the foregoing opinion was based were all established by evidence, which failed to reveal the correct location of the curb and gutter, and the bill of complaint was dismissed.   On appeal the decree of the Chancellor was sustained, the opinion of the Supreme Court appearing, *post p.* 00.